# IN THE UNITED STATES DISTRICT COURT
# FOR THE NOTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC., a corporation,<br><br>                 Plaintiff,<br><br>     v.<br><br>CHAI TRUST COMPANY, LLC d/b/a EQUITY GROUP INVESTMENTS, a limited liability company; PAR PACIFIC HOLDINGS, INC., a corporation; and PAR HAWAII REFINING, LLC, a limited liability corporation; and DOES 1-100.<br><br>                 Defendants. | CASE NO.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, 3D GLOBAL SOLUTIONS, INC., by and through its undersigned

counsel, brings this Complaint against Defendants, CHAI TRUST COMPANY,

LLC d/b/a EQUITY GROUP INVESTMENTS; PAR PACIFIC HOLDINGS,

INC.; PAR HAWAII REFINING, LLC; and DOES 1-100, and alleges as follows:

## INTRODUCTION

1.      This case arises out of Defendants' unlawful procurement of the 2017

and 2018 Defense Logistics Agency – Energy Section bulk petroleum contracts,

which Plaintiff, the unsuccessful second low bidder and eligible Service-Disabled

Veteran-Owned Small Business, would have been awarded but for Defendants'
intentional and fraudulent misconduct.

## JURISDICTION AND VENUE

2.     This court has original federal question jurisdiction over all claims
arising under federal law pursuant to 28 U.S.C. § 1331, and supplemental
jurisdiction over those claims arising under state law pursuant to 28 U.S.C. § 1367
in that they form part of the same case or controversy under Article III of the
United States Constitution.

3.     This court further has original diversity jurisdiction over this action
pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or
value of $75,000, exclusive of interest and costs, and is between citizens of
different states.

4.     This court has personal jurisdiction over Defendants because they
have sufficient minimum contacts with this state such that exercising jurisdiction
over these Defendants does not offend traditional notions of fair play and
substantial justice in that Defendants conduct business in Illinois and have
committed tortious acts in Illinois as set forth herein. Moreover, at least one
Defendant, who has the power to control all other Defendants, is incorporated in
and has its principle place of business in Illinois.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and at least one Defendant is subject to the court's personal jurisdiction with respect to this action.

## PARTIES

6.     At all times relevant herein, Plaintiff, 3D GLOBAL SOLUTIONS, INC. (3DGS), was and is a corporation incorporated, organized, and existing under the laws of the State of Indiana, with its principal place of business in Indiana.

7.     At all times relevant herein, Plaintiff was and is a Service-Disabled Veteran Owned Small Business as defined by the Small Business Administration and 38 U.S.C. § 101(2).

8.     At all times relevant herein, Defendant CHAI TRUST COMPANY, LLC d/b/a EQUITY GROUP INVESTMENTS (CHAI) was and is a corporation incorporated, organized, and existing under the laws of the State of Illinois, with its principal place of business in Illinois. CHAI was and is Defendant PAR PACIFIC HOLDING, INC.'s single largest shareholder and has the power to control Defendant PAR PACIFIC HOLDING, INC. based upon ownership. All acts and omissions of CHAI as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

9.     At all times relevant herein, Defendant PAR PACIFIC HOLDINGS, INC. (PAR PACIFIC) was and is a publicly-traded corporation incorporated, organized, and existing under the laws of the State of Delaware, with its principal place of business in Texas. PAR PACIFIC directly and wholly owns Defendant PAR HAWAII REFINING, LLC, and has the power to control Defendant PAR HAWAII REFINING, LLC. All acts and omissions of PAR PACIFIC as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

10.     At all times relevant herein, Defendant, PAR HAWAII REFINING, LLC (PAR HAWAII), was and is a  limited liability company incorporated, organized, and existing under the laws of the State of Hawaii, with its principal places of business in Hawaii. All acts and omissions of Defendant as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

11.     Upon information and belief, DOES 1-100 are associated with PAR HAWAII, have the power to control PAR HAWAII, and/or conspired with PAR HAWAII to commit the wrongful acts described herein. Plaintiff is unaware of the true names and capacities of those Defendants named herein as DOES 1-100.

Plaintiff will amend this Complaint to allege said Defendants' true names and capacities when that information becomes known to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that DOES 1-100 are legally responsible and liable the acts, omissions, and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages. Plaintiff will seek to amend this Complaint to set forth said true names and identities of the unknown named DOE Defendants when they are ascertained.

## FACTUAL ALLEGATIONS

### 2017 and 2018 Contracts

12.     In January 2017, Defense Logistics Agency – Energy Section (DLA) issued Request for Proposal (RFP) No. SPE600-17-R-0709 for various types of fuel, including bulk petroleum ("2017 contract").

13.     The 2017 contract was for a one-year period with a 30-day carryover period and an October 30, 2018 performance completion date.

14.     The 2017 RFP was partially set aside for small business with a corresponding size standard of either 1,500 employees or 200,000 barrels per calendar day of total Operable Atmospheric Crude Oil Distillation capacity.

15.     The federal government's goal is to award at least three percent of all federal contracting dollars to service-disabled veteran-owned small businesses each year.

16.     In furtherance of this goal, the government limits competition for certain contracts to businesses that participate in the Service-Disabled Veteran-Owned Small Business program.

17.     To qualify for the disabled veterans' business program, a business must:

    a.  Be a small business;
    b.  Be at least 51% owned and controlled by one or more service-disabled veterans;
    c.  Have one or more service-disabled veterans manage day-to-day operations and also make long-term decisions;
    d.  Eligible veterans must have a service-connected disability

18.     In or around February 2017, both Plaintiff and Defendant submitted its offers to DLA. Both parties' submissions included self-certifications that each was an **eligible small business for purposes of the contract**.

19.     In or around July 2017, the Contracting Officer (CO) notified Plaintiff that Defendant was the low bidder and had been awarded the contract.

20.     The CO further notified Plaintiff that it was the second low bidder and was otherwise eligible for the 2017 contract.

21.     Thereafter, in January 2018, the DLA issued RFP No. SPE602-18-R-0702 for the same ("2018 contract").

22.     The 2018 contract was for a one-year period with a 30-day carryover period and an October 30, 2019 completion date.

23.     The 2018 RFP was again partially set aside for small business with a corresponding size standard of either 1,500 employees or 200,000 barrels per calendar day of total Operable Atmospheric Crude Oil Distillation capacity.

24.     On or around February 2018, both Plaintiff and Defendant again submitted its offers to DLA. Both parties' submissions to the DLA again included self-certifications that they were an eligible small business for purposes of the contract.

25.     On July 31, 2018, the CO notified Plaintiff that Defendant was the low bidder and had once again been awarded the contract.

26.     The CO again further notified Plaintiff that it was the second low bidder and was otherwise eligible for the 2018 contract.

**Untimely Size Protest**

27.     On August 27, 2018, Plaintiff filed with the CO a size protest against Defendant, PAR HAWAII, based on its belief Defendant, together with its affiliates, including PAR PACIFIC, exceeded the size standard for a qualifying small business under the 2018 contract.

28.     On September 10, 2018, the CO forwarded the protest to the United States Small Business Administration (SBA) Office of Government Contracting, Area VI (Area Office).

29.     On September 24, 2018, the SBA Office of Government Contracting, Area VI (Area Office) dismissed the protest as untimely.

### SBA/OHA Final Size Determination

30.     After dismissing the size protest as untimely, the Area Director then filed his own size protest against Defendant based on the allegations made by Plaintiff.

31.     On September 25, 2018, the Area Office notified Defendant of the protest.

32.     On September 27, 2018, Defendant PAR HAWAII submitted documentation to the Area Office purporting to show that its capacity fell well below the size standard of 200,000 barrels.

33.     On October 15, 2018, Defendant PAR HAWAII submitted further documentation purporting to show that its capacity also fell below the standard size of 1,500 employees.

34.     That same day, Defendant PAR HAWAII disclosed to the Area Office an "entity organization chart" which revealed, in part, that PAR PACIFIC directly and wholly owned PAR HAWAII.

35.     Upon learning that PAR PACIFIC directly and wholly owned PAR HAWAII, the Area Office requested ownership information for PAR PACIFIC in order to make a proper size determination.

36.    In response, Defendant PAR HAWAII revealed that Defendant PAR PACIFIC is a publicly-traded and widely-held corporation with over 150 institutional investors collectively holdings 68.73% of its 45,879,509 outstanding shares of common stock.

37.    On October 16, 2018, the Area Office stated that it still needed ownership information.

38.    On October 19, 2018, Defendant PAR HAWAII provided additional information about its stockholders taken from various SEC filings. The information Defendant PAR HAWAII provided was still insufficient to make the size determination.

39.    Despite ample opportunities, PAR HAWAII failed to produce the necessary ownership documentation to support its contention that it is a small business eligible to bid on the contract specifically set aside for small businesses such as Plaintiff.

40.    On November 9, 2018, the Area Office issued Size Determination No. 06-2018-092, concluding that Defendant was not an eligible small business for the 2018 contract. The Area Office based its finding on Defendant's non-compliance in producing the legally required documentation to establish that it is an eligible small business.

41.     On November 20, 2018, Defendant filed an appeal of the SBA's size determination. Its appeal challenged the process and failed to present the ownership documentation establishing that it qualifies as a small business for the purpose of the contract. [Exhibit A]

42.     On April 2, 2019, the SBA's Office of Hearings and Appeals (OHA) issued a final decision affirming the size determination. Pursuant to 13 C.F.R. § 134.316(f), the decision may not be reconsidered. [Exhibit A, *Size Appeal of Par Hawaii Refining, LLC*, SBA No. SIZ-5989 (2019)]

43.     As the second low-bidder and qualified small business under the 2017 and 2018 contracts set forth above, Plaintiff should have been awarded the contracts.

## Defendants' Fraudulent Misrepresentations/Concealment

44.     Upon information and belief, Defendant was ineligible for the 2017 and 2018 contracts because it did not qualify for the small business set aside at the time it submitted its offers and false self-certifications to DLA for either contract.

45.     Upon information and belief, Defendant knew or had reason to know that it did not qualify for the small business set aside and was not eligible for the contracts at the time it submitted its offers and false self-certifications to DLA for either contract.

46.    Upon information and belief, Defendant fraudulently concealed ownership information from, among others, the DLA, the SBA, the Plaintiff, and the public, in order to induce the DLA to award Defendant the 2017 and 2018 contracts and to prevent Plaintiff or others from timely filing a size protest.

47.    Defendant's fraudulent concealment, as set forth above, prevented or otherwise deterred Plaintiff from timely filing a size protest.

48.    Had Plaintiff timely filed a size protest, Defendant would have been disqualified and the contracts would have been awarded to Plaintiff.

49.    But for Defendant's false self-certification and concealment of ownership information, Plaintiff would have been awarded the 2017 and 2018 contracts as the second-low eligible bidder or would have timely filed a size protest.

50.    As a direct and proximate result of Defendants' fraudulent conduct and concealment, Plaintiff suffered reputational harm and lost profits that it would have otherwise earned under the 2017 and 2018 contracts.

## COUNT I
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO) VIOLATION [18 U.S.C. § 1962]

51.    Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

52.     Pursuant to 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

53.     The Act permits "[a]ny person inured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

54.     Defendant, by and through its agents, engaged in a pattern of racketeering activity consisting of multiple acts of wire fraud in the years 2017 and 2018 in that:

>   a. Defendant used electronic means to carry out its fraudulent scheme, namely, Defendant electronically submitted a false self-certification to the SBA and DLA that it was an eligible small business knowing or with reason to know that it did not qualify for the small business set aside in either the 2017 or 2018 contracts.
>
>   b. For the purpose of executing or attempting to execute the above-referenced scheme or artifice to defraud and to obtain money by

means of false and fraudulent pretenses, representations, and promises, defendants, jointly and severally, caused, induced, procured and aided and abetted the transmission by means of wire communication in interstate commerce, of monetary payments from the DLA to Defendants' bank or banks.

55.    The DLA then relied on Defendant's false self-certification when it awarded the 2017 and 2018 contracts to Defendant over Plaintiff, an eligible small business and the second-low bidder.

56.    Plaintiff further relied on Defendant's false self-certification when it delayed or otherwise failed to timely file a size protest against PAR HAWAII after it was awarded the 2017 and 2018 contracts.

57.    But for Par Hawaii's unlawful misrepresentations regarding its status as a qualifying small business, Plaintiff would have timely submitted its size protest and/or would have been awarded both contracts.

58.    As a direct and proximate result of Defendants' fraudulent representations, acts, and concealments set forth above, Plaintiff suffered damages, including, but not limited to, significant lost profits under the 2017 and 2018 contracts and reputational harm arising from the loss of both contracts.

59.    Plaintiff's professional reputation and ability to bid and successfully win government contracts hinges on a demonstration of past-performance. The

wrongful usurpation of the contract opportunity by defendant, denied plaintiff the reputational professional benefit of performing on a very lucrative contract that would have demonstrated plaintiff's professional capacity to execute. Performance would have enhanced plaintiff's future opportunities to win other lucrative contracts. As a direct and proximate result of Defendant's fraud, plaintiff suffered a loss of earning capacity.

60.     As a further direct and proximate result of Defendant's fraudulent conduct, Plaintiff incurred costs and attorney's fees, and is entitled to treble damages under the Act.

61.     The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of others, and therefore warrants an award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT II
## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

62.     Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

63.     As a qualified Service-Disabled Veteran-Owned Small Business and second-low bidder under the 2017 and 2018 contracts set forth above, Plaintiff had

a reasonable expectation of entering into a valid business relationship with the DLA that would have resulted in an economic benefit to Plaintiff.

64.     Defendants knew or had reason to know that as a qualified Service-Disabled Veteran-Owned Small Business and second-low bidder under the 2017 and 2018 contracts, Plaintiff had a reasonable expectation of entering into a valid business relationship with the DLA.

65.     By submitting offers to the DLA for the 2017 and 2018 contracts and accepting both contract awards knowing that PAR HAWAII did not qualify for either contract, Defendants purposely interfered with Plaintiff's reasonable expectation of entering into a valid business relationship with the DLA and prevented Plaintiff's legitimate expectancy from being fulfilled.

66.     Further, by submitting false self-certifications that PAR HAWAII qualified as a Service-Disabled Veteran-Owned Small Business and concealing its ownership information from the DLA, SBA, Plaintiff, and the public, so as to prevent Plaintiff and others from timely filing a size protest, Defendants purposely interfered with Plaintiff's reasonable expectation of entering into a valid business relationship with the DLA and prevented Plaintiff's legitimate expectancy from being fulfilled.

67.     The expected relationship between Plaintiff and the DLA was actually disrupted in that Plaintiff was not awarded the 2017 or 2018 contracts and was deterred from timely filing a size protest.

68.     As a direct and proximate result of Defendants' fraudulent representations, acts, and concealments set forth above, Plaintiff suffered damages, including, but not limited to, significant lost profits under the 2017 and 2018 contracts and reputational harm arising from the loss of both contracts.

69.     The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of others, and therefore warrants an award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT III
## FRAUDULDENT MISREPRESENTATION & CONCEALMENT

70.     Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

71.     Defendants concealed PAR HAWAII's ownership information and submitted false self-certifications that PAR HAWAII qualified as a Service-Disabled Veteran-Owned Small Business when it knew or had reason to know, at the time the false self-certifications were made, that PAR HAWAII did not qualify as a Service-Disabled Veteran-Owned Small Business based upon ownership.

72.     By submitting a false self-certification that PAR HAWAII qualified as a Service-Disabled Veteran-Owned Small Business and intentionally concealing ownership information from the DLA, SBA, Plaintiff, and others, Defendants intentionally induced the DLA to award PAR HAWAII the 2017 and 2018 contracts and prevented or otherwise deterred Plaintiff from timely filing a size protest.

73.     Plaintiff justifiably relied on Defendants' fraudulent representations, acts, and concealments when it failed to timely submit a size protest, which it otherwise would have submitted.

74.     As the second-low bidder and qualifying Service-Disabled Veteran-Owned Small Business, had Plaintiff timely submitted a time protest, Defendant would have been disqualified and Plaintiff would have been awarded both contracts.

75.     As a direct and proximate result of Defendants' fraudulent representations, acts, and concealments set forth above, Plaintiff suffered damages, including, but not limited to, significant lost profits under the 2017 and 2018 contracts and reputational harm arising from the loss of both contracts.

76.     The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of others, and therefore warrants an award of

punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT IV
## DECEPTIVE TRADE PRACTICES
[Consumer Fraud And Deceptive Business Practices Act (ICFA)]
(815 ILCS 505/2)

77.　　Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

78.　　Under the Consumer Fraud And Deceptive Business Practices Act "…deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

79.　　The Act permits "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

80.　　Defendant was ineligible for the 2017 and 2018 contracts because it did not qualify for the small business set aside at the time it submitted its offers and false self-certifications to DLA for either contract.

81.     Defendant knew or had reason to know that it did not qualify for the small business set aside and was not eligible for the contracts at the time it submitted its offers and false self-certifications to DLA for either contract.

82.     Defendant fraudulently concealed ownership information from the DLA, the SBA, the Plaintiff, and others in order to induce the DLA to award Defendant the 2017 and 2018 contracts and to prevent Plaintiff or others from timely filing a size protest.

83.     Defendant's fraudulent conduct, as set forth above, prevented or otherwise deterred Plaintiff from timely filing a size protest.

84.     As the second-low bidder and qualifying Service-Disabled Veteran-Owned Small Business, had Plaintiff timely submitted a time protest, Defendant would have been disqualified and Plaintiff would have been awarded both contracts.

85.     As a direct and proximate result of Defendants' fraudulent representations, acts, and concealments set forth above, Plaintiff suffered damages, including, but not limited to, significant lost profits under the 2017 and 2018 contracts and reputational harm arising from the loss of both contracts.

86.     As a direct and proximate result of Defendant's fraudulent conduct, Plaintiff incurred attorney's fees and costs recoverable under the Act.

87.     The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of others, and therefore warrants an award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

88.     Pursuant to Section 10a(d), Plaintiff has mailed a copy of this Complaint to the Attorney General.

## COUNT V
## CONSPIRACY

89.     Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

90.     Defendants, known and unknown, maliciously, and with intent to wrongfully usurp opportunities specifically set-aside by law for qualified small businesses, agreed and conspired together, by the acts described above, to unfairly and fraudulently procure a monetary benefit to which they were not entitled and deprive Plaintiff of its reasonably anticipated profits in the contracts in question.

91.     In furtherance of the conspiracy, Defendants made the aforementioned fraudulent self-certification and submitted documentation in support of that false certification to the Small Business Administration's Office to Hearings and Appeals.

92.     As a direct and proximate result of Defendants' fraudulent representations, acts, and concealments set forth above, Plaintiff suffered damages,

including, but not limited to, significant lost profits under the 2017 and 2018 contracts and reputational harm arising from the loss of both contracts.

93.     The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of others, and therefore warrants an award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

**COUNT VI**
**UNJUST ENRICHMENT**

94.     Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

95.     The Defendants were unjustly enriched by virtue of their fraudulent misrepresentations, concealments, and/or deceptive business practices as set forth above.

96.     The Defendants have unjustly retained the benefit of profits derived from the 2017 and 2018 contracts to Plaintiff's detriment.

97.     The Defendants' retention of profits arising from the contracts violates the fundamental principles of justice, equity, and good conscience.

**WHEREFORE**, Plaintiffs requests relief as hereinafter provided.

## PRAYER FOR RELIEF

A.     For compensatory damages, including lost profits, in an amount to be proven at trial;

B.     For treble damages equal to three times the compensatory damages, in an amount to be proven at trial;

C.     For reputational damages based on the loss of future capacity to compete, in an amount to be proven at trial;

D.     For punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct;

E.     For civil penalties as permitted by law;

F.     For prejudgment interest;

G.     For reasonable attorney's fees and costs;

H.     For such further other relief as the Court may deem just, proper and appropriate.

Dated: November 14, 2019        **THE LAW OFFICES OF HAYTHAM FARAJ**

By:     _____/s/ Haytham Faraj_____
        **HAYTHAM FARAJ, ESQ.**
        1935 W Belmont Ave.
        Chicago, IL 60657
        Tel: (312) 635-0800
        Fax: (202) 280-1039
        Email: haytham@farajlaw.com

        Attorneys for Plaintiff,
        3D GLOBAL SOLUTIONS, INC.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: November 14, 2019      **THE LAW OFFICES OF HAYTHAM FARAJ**

By:      _____/s/ Haytham Faraj_____
**HAYTHAM FARAJ, ESQ.**
1935 W Belmont Ave.
Chicago, IL 60657
Tel: (312) 635-0800
Fax: (202) 280-1039
Email: haytham@farajlaw.com

Attorneys for Plaintiff,
3D GLOBAL SOLUTIONS, INC.