# IN THE UNITED STATES DISTRICT COURT
# FOR THE NOTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| 3DGS, LLC, a limited liability company,<br><br>     Plaintiff,<br><br>  v.<br><br>CHAI TRUST COMPANY, LLC d/b/a EQUITY GROUP INVESTMENTS, a limited liability company; PAR PACIFIC HOLDINGS, INC., a corporation; and PAR HAWAII REFINING, LLC, a limited liability company; and DOES 1-100.<br><br>     Defendants. | CASE NO.: 19-cv-07524<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, 3DGS, LLC[1], by and through its undersigned counsel, brings this Complaint against Defendants, CHAI TRUST COMPANY, LLC d/b/a EQUITY GROUP INVESTMENTS; PAR PACIFIC HOLDINGS, INC.; PAR HAWAII REFINING, LLC; and DOES 1-100, and alleges as follows:

## INTRODUCTION

1.  This case arises out of Defendants' unlawful procurement of the 2017 and 2018 Defense Logistics Agency – Energy Section bulk petroleum contracts, partially set-aside for small business, which Plaintiff, an eligible Service-Disabled

---

[1] Incorrectly named as 3D Global Solutions, Inc in the Original Complaint .(Dkt. 1).

1

Veteran-Owned Small Business, would have been awarded but for Defendants' intentional and fraudulent usurpation of those business opportunities.

## JURISDICTION AND VENUE

2.     This court has original federal question jurisdiction over all claims arising under federal law pursuant to a U.S.C. § 1331, and supplemental jurisdiction over those claims arising under state law pursuant to 28 U.S.C. § 1367 in that they form part of the same case or controversy under Article III of the United States Constitution.

3.     This court further has original diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.     This court has personal jurisdiction over Defendants pursuant to 18 U.S.C. § 1965, because at least one Defendant is incorporated in and has its principle place of business in Illinois, and all other Defendants are residents of and conduct business in the United States.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and at least one Defendant is subject to the court's personal jurisdiction with respect to this action pursuant to 18 U.S.C.  1965.

## PARTIES

6.     At all times relevant herein, Plaintiff, 3DGS, LLC (3DGS), was and is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Indiana.

7.     At all times relevant herein, Plaintiff was and is a qualified Service-Disabled Veteran-Owned Small Business as defined by the Small Business Administration and 38 U.S.C. § 101(2).

8.     At all times relevant herein, Defendant CHAI TRUST COMPANY, LLC d/b/a EQUITY GROUP INVESTMENTS (CHAI) was and is a limited liability company organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois. CHAI was and is Defendant PAR PACIFIC HOLDING, INC.'s single largest shareholder. All acts and omissions of CHAI as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

9.     At all times relevant herein, Defendant PAR PACIFIC HOLDINGS, INC. (PAR PACIFIC) was and is a publicly-traded corporation incorporated, organized, and existing under the laws of the State of Delaware, with its principal place of business in Texas. PAR PACIFIC directly and wholly owns Defendant PAR HAWAII REFINING, LLC, and has the power to control Defendant PAR HAWAII

REFINING, LLC. All acts and omissions of PAR PACIFIC as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

10.     At all times relevant herein, Defendant, PAR HAWAII REFINING, LLC (PAR HAWAII), was and is a limited liability company organized and existing under the laws of the State of Hawaii, with its principal place of business in Hawaii. All acts and omissions of PAR HAWAII as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

11.     Upon information and belief, DOES 1-100 are affiliated and/or associated with at least one Defendant, have the power to control at least one Defendant, and/or conspired with at least one Defendant to commit the wrongful acts described herein. Plaintiff is unaware of the true names and capacities of those Defendants named herein as DOES 1-100. Plaintiff will amend this Complaint to allege said Defendants' true names and capacities when that information becomes known to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that DOES 1-100 are legally responsible and liable the acts, omissions, and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages. Plaintiff will seek to amend this Complaint to set forth said

true names and identities of the unknown named DOE Defendants when they are ascertained.

## FACTUAL ALLEGATIONS
### Relationship Between Defendants

12.    At all times relevant herein, PAR HAWAII is and was one of dozens wholly-owned subsidiaries of PAR PACIFIC.

13.    PAR PACIFIC is a publicly-traded and widely-held corporation with over 150 institutional investors collectively holding 68.73% of its 45,879,509 outstanding shares of common stock.

14.    At all times relevant herein, CHAI is and was PAR PACIFIC's single largest shareholder based on percentage.

15.    As of June 30, 2018, PAR PACIFIC's largest three shareholders were: CHAI with 28.44%; WhiteBox Advisors LLC with 8.52%; and Blackrock Inc. with 8.42%. No other shareholders held more than 5% of PAR PACIFIC. CHAI's holding is over three times larger than the next largest shareholder and has the power to control PAR PACIFIC based upon ownership. CHAI is therefore affiliated with Defendants for size determination purposes pursuant to 13 C.F.R § 121.103.

16.    Upon information and belief, DOES 1-100 have the power to control PAR PACIFIC (and therefore PAR HAWAII) based upon ownership and are therefore affiliated with Defendants for size determination purposes pursuant to 13 C.F.R. § 121.103.

17.     CHAI not only has the power to control PAR PACIFIC, but does in fact control PAR PACIFIC, who in turn controls PAR HAWAII.

18.     CHAI is a private company that administers trusts established for the benefit of members of Sam Zell's family and that serves as the Zell family office.

19.     Billionaire Sam Zell serves as the founder and chairman of Equity Group Investments (EGI), a purported division of CHAI, that provides investment management services on its behalf.

20.     CHAI is registered as an LLC with the Illinois Secretary of State with the "assumed name" of Equity Group Investments (EGI).

21.     At all times relevant herein, Mark Sotir (Mr. Sotir) served and continues to serve as the President of Equity Group Investments (EGI), and "employs his leadership inside and outside [the] firm," by managing and developing EGI's corporate investment team and deploying Mr. Zell's "active-ownership approach by engaging with portfolio company management to improve business strategies and operating structures, aligning all toward achieving optimum shareholder value."

22.     Mr. Sotir also serves as a Senior Managing Director of CHAI and serves on the board of EGI investment companies.

23.     At all relevant times herein, CHAI operated and continues to operate under the assumed name of EGI, a purported "division" of CHAI, who is legally responsible for all of the obligations and debts of EGI.

24.     At all relevant times herein, Scott Peppet (Mr. Peppet) served and continues to serve as the President of CHAI.

25.     In early 2001, EGI made a "debt investment" in Delta Petroleum, and subsequently "stewarded the company through bankruptcy."

26.     Delta Petroleum later changed its name to PAR PACIFIC.

27.     Since then, CHAI has successfully wrested control of PAR PACIFIC and PAR HAWAII by placing its own trusted agents and associates into positions of power within PAR PACIFIC, a holding company that wholly owns and controls PAR HAWAII.

28.     According to CHAI, "EGI was instrumental in building [PAR PACIFIC]'s management team, developing its acquisition strategy and a series of rights offerings."

29.     In 2015, one of EGI's senior investment managers, William Pate (Mr. Pate), was appointed as the Chief Executive Officer (CEO) of PAR PACIFIC.

30.     Mr. Pate has served and continues to serve as the President and CEO of PAR PACIFIC since 2015.

31.     Prior to becoming President and CEO of PAR PACIFIC and while serving on board of directors for PAR PACIFIC, Mr. Pate served as the Co-President of EGI and had been employed by EGI in "various capacities" since 1994.

32.     William Monteleone (Mr. Monteleone) has served and continues to serve as the Chief Financial Officer (CFO) of PAR PACIFIC since March 2017. Mr. Monteleone also served as the Vice President of Mergers and Acquisitions for PAR PACIFIC from February 2015 until February 2017, and as the CEO from June 2013 until 2015.

33.     Prior to becoming the CEO of PAR PACIFIC in 2013 and while serving as a Director of PAR PACIFIC beginning in 2012, Mr. Monteleone also served as the Vice President of EGI from 2008 until 2013.

34.     At all times relevant herein, Robert Silberman (Mr. Silberman) has served and continues to serve as both an Advisor for EGI and as Chairman of the Board of PAR PACIFIC.

35.     At all times relevant herein, Jim Yates (Mr. Yates) has served and continues to serve as the President of PAR HAWAII, a wholly-owned subsidiary of PAR PACIFIC. Mr. Yates served as the CEO and President of Mid Pac Petroleum, LLC (Mid Pac), from August 2007 until PAR PACIFIC's acquisition of Mid Pac, when PAR PACIFIC appointed Mr. Yates to serve as the President of PAR HAWAII.

36.     At all times relevant herein, Jeffrey Cummins (Mr. Cummins) served and continues to serve as the Director of Corporate Procurement at PAR PACIFIC

and acted as an agent of PAR HAWAII when he repeatedly certified and represented PAR HAWAII as a small business, as set forth below.

### Small Business Self-Certifications

37.     On August 8, 2016, PAR HAWAII and PAR PACIFIC, by and through their joint agent, Mr. Cummins, publicly self-certified and represented PAR HAWAII through the System for Award Management (SAM) as a small business concern engaged in petroleum refining (NAICS Code 324110) with a corresponding size standard of 1,500.

38.     On June 14, 2017, PAR HAWAII and PAR PACIFIC, by and through their joint agent, Mr. Cummins, again publicly self-certified and represented PAR HAWAII through SAM as a small business concern engaged in petroleum refining (NAICS Code 324110) with a corresponding size standard of 1,500.

39.     On May 8, 2018, PAR HAWAII and PAR PACIFIC, by and through their joint agent, Mr. Cummins, again publicly self-certified and represented PAR HAWAII through SAM as a small business concern engaged in petroleum refining (NAICS Code 324110) with a corresponding size standard of 1,500.

40.     On May 25, 2018, PAR HAWAII and PAR PACIFIC, by and through their joint agent, Mr. Cummins, again publicly self-certified and represented PAR HAWAII through SAM as a small business concern engaged in petroleum refining (NAICS Code 324110) with a corresponding size standard of 1,500.

41.     Upon information and belief, on or before August 8, 2016, June 14, 2017, May 8, 2018, and May 24, 2018, PAR HAWAII and PAR PACIFIC, by and through their joint agent, Mr. Cummins, together with Mr. Sotir, Mr. Monteleone, and others, agreed with CHAI, by and through its agents, Mr. Pate, Mr. Silberman, and others, to publicly self-certify and represent PAR HAWAII through SAM as a small business concern engaged in petroleum refining (NAICS Code 324110) with a corresponding size standard of 1,500, knowing that PAR HAWAII, together with its affiliates, did not qualify as a small business.

## 2017 and 2018 Contracts

42.     In January 2017, Defense Logistics Agency – Energy Section (DLA) issued Request for Proposal (RFP) No. SPE600-17-R-0709 for various types of fuel, including bulk petroleum ("2017 contract").

43.     The 2017 contract was for a one-year period with a 30-day carryover period and an October 30, 2018, performance completion date.

44.     The 2017 RFP was partially set aside for partial small business with a corresponding size standard of either 1,500 employees or 200,000 barrels per calendar day of total Operable Atmospheric Crude Oil Distillation capacity.

45.     The federal government's goal is to award at least 23% of all federal contracting dollars to small businesses each year.

46.    To qualify as a small business, the company must meet the following eligibility criteria:

    a.  Meet the SBA's numerical size standards for small, as set forth above;
    b.  Be a for-profit business of any legal structure;
    c.  Be independently owned and operated;
    d.  Not be nationally dominant in its field;
    e.  Be physically located and operate in the U.Z. or its outlying areas and make a significant contribution to the U.S. economy through payment of taxes and/or use of American products, material and/or labor.

47.    In or around February 2017, both 3DGS and PAR HAWAII, under the control and direction of PAR PACIFIC and CHAI, submitted offers to DLA. Both parties' submissions included self-certifications that each was an **eligible small business for purposes of the contract**.

48.    Such certifications are deemed affirmative, willful and intentional certifications of small business size and status.

49.    At the time of its submission, Defendants knew or had reason to know that PAR HAWAII did not qualify as a small business because it did not meet the size standard.

50.    Both parties' proposals were deemed technically acceptable, which opened up the pricing portion of the bid, wherein all offerors could see the current best overall laid down price during that round and any qualified small business offeror could choose to match the offer or beat it.

51.     3DGS beat the best overall laid down price in the second round.

52.     Because PAR HAWAII, under the control and direction of PAR PACIFIC and CHAI, represented itself as a small business, it was afforded the opportunity to, and did, beat 3DGS's best overall laid down price in the third round and was awarded the contract.

53.     Plaintiff did not have an opportunity to match or beat PAR HAWAII's final offer. No other offer was within the competitive range.

54.     In or around July 2017, the Contracting Officer (CO) notified 3DGS that Par Hawaii was the low bidder and had been awarded the contract.

55.     The CO further notified 3DGS that it was the second low bidder and was otherwise eligible for the 2017 contract.

56.     Thereafter, in January 2018, the DLA issued RFP No. SPE602-18-R-0702 for the same ("2018 contract").

57.     The 2018 contract was for a one-year period with a 30-day carryover period and an October 30, 2019 completion date.

58.     The 2018 RFP was again partially set aside for small business with a corresponding size standard of either 1,500 employees or 200,000 barrels per calendar day of total Operable Atmospheric Crude Oil Distillation capacity.

59.     On or around February 2018, both 3DGS and Par Hawaii, under the direction and control of PAR PACIFIC and CHAI, again submitted its offers to

DLA. Both parties' submissions to the DLA again included self-certifications that they were eligible small businesses for purposes of the contract.

60.    At the time of its submission, Defendants knew or had reason to know that PAR HAWAII did not qualify as a small business because it did not meet the size standard.

61.    Both parties' proposals were deemed technically acceptable.

62.    3DGS again beat the best overall laid down price in the second round.

63.    Because PAR HAWAII, under the control and direction of PAR PACIFIC and CHAI, continued to represent itself as a small business, it was once again afforded the opportunity to, and did, beat 3DGS's best overall laid down price in the third round and was awarded the contract.

64.    Plaintiff did not have an opportunity to match or beat PAR HAWAII's final offer. No other offer was within the competitive range.

65.    On July 31, 2018, the CO notified 3DGS that Par Hawaii was the low bidder and had once again been awarded the contract.

66.    The CO again further notified 3DGS that it was the second low bidder and was otherwise eligible for the 2018 contract.

## 2018 Untimely Size Protest

67.    Pursuant to § 121.1001, any offeror that the contracting officer has not eliminated from consideration for any procurement-related reason, such as non-

responsiveness, technical unacceptability, or outside of the competitive range may initiate a size protest or request a formal size determination in connection with a particular procurement, which has been restricted to or reserved for small businesses.

68.    Such protests must be received by the CO within 5 days after the CO has notified the protestor of the identity of the prospective awardee for the contract, and must be sufficiently specific to provide reasonable notice as to the ground upon which the protested concern's size is questioned. Non-specific protests will be dismissed by SBA.

69.    A CO may accept a concern's self-certification as true for the particular procurement in the absence of a written protest by other offerors or other credible information which causes the contracting officer or SBA to question the size of the concern.

70.    On August 26, 2018, 3DGS filed with the CO a size protest against PAR HAWAII based on its belief Defendant, together with its affiliates, including PAR PACIFIC, exceeded the size standard for a qualifying small business under the 2018 contract.

71.    On September 10, 2018, the CO forwarded the protest to the United States Small Business Administration (SBA) Office of Government Contracting, Area VI (Area Office).

72.    On September 24, 2018, the SBA Office of Government Contracting, Area VI (Area Office) dismissed the protest as untimely.

## SBA/OHA Final Size Determination

73.    After dismissing the size protest as untimely, the Area Director then filed his own size protest against Defendant, PAR HAWAII, based on the allegations made by Plaintiff.

74.    On September 25, 2018, the Area Office notified Defendant, PAR HAWAII, of the protest.

75.    On September 27, 2018, Defendant, PAR HAWAII, under the control and direction of Defendants, PAR PACIFIC and CHAI, submitted documentation to the Area Office purporting to show that its capacity fell well below the size standard of 200,000 barrels.

76.    On October 15, 2018, Defendant, PAR HAWAII, under the control and direction of Defendants, PAR PACIFIC and CHAI, submitted further documentation purporting to show that its capacity also fell below the standard size of 1,500 employees.

77.    That same day, Defendant, PAR HAWAII, disclosed to the Area Office an "entity organization chart" which revealed, in part, that Defendant, PAR PACIFIC, directly and wholly owned Defendant, PAR HAWAII.

78.    Upon learning that Defendant, PAR PACIFIC, directly and wholly owned Defendant, PAR HAWAII, the Area Office requested ownership information for Defendant, PAR PACIFIC, in order to make a proper size determination.

79.    In response, Defendant, PAR HAWAII, revealed that Defendant, PAR PACIFIC, is a publicly-traded and widely-held corporation with over 150 institutional investors collectively holdings 68.73% of its 45,879,509 outstanding shares of common stock.

80.    On October 16, 2018, the Area Office stated that it still needed ownership information.

81.    On October 19, 2018, Defendant, PAR HAWAII, under the control and direction of Defendants, PAR PACIFIC and CHAI, provided additional information about the stockholders of Defendant, PAR PACIFIC, taken from various SEC filings. The information Defendant, PAR HAWAII, provided was still insufficient to make the size determination.

82.    Despite ample opportunities, Defendant, PAR HAWAII, under the control and direction of Defendants, PAR PACIFIC and CHAI, failed to produce the necessary ownership documentation to support its contention that it is a small business eligible to bid on the contract specifically set aside for small businesses such as Plaintiff.

83.     On November 9, 2018, the Area Office issued Size Determination No. 06-2018-092, concluding that Defendant, PAR HAWAII, was not an eligible small business for the 2018 contract. The Area Office based its finding on Defendant, PAR HAWAII's non-compliance in producing the legally required documentation to establish that it is an eligible small business.

84.     Once PAR HAWAII was determined to be other than small under this particular size standard, it became ineligible for any procurement or any assistance authorized by the Small Business Act or the Small Business Investment Act of 1958 which requires the same or a lower size standard, unless SBA recertifies PAR HAWAII to be small pursuant to §121.1010 or OHA reverses the adverse size determination.

85.     Still, PAR HAWAII did not update its public self-certification and representation through SAM that it qualified as a small business.

86.     On November 20, 2018, PAR HAWAII, under the control and direction of PAR PACIFIC and CHAI, filed an appeal of the SBA's size determination. The appeal challenged the process and failed to present the ownership documentation establishing that Defendant, PAR HAWAII, qualifies as a small business for the purpose of the contract.

87.     The Area Office found that it needed additional information regarding CHAI because, for example, if CHAI is found to have the power to control other

petroleum refineries, those refineries are also considered PAR HAWAII's affiliates, and their barrels per day must be added to PAR PACIFIC's and their combined barrels must be below the size standard.

88. PAR HAWAII failed or otherwise refused to produce the additional information. In fact, PAR HAWAII claimed in its appeal that PAR HAWAII "lacked the authority to compel [CHAI] to share information with the SBA," despite the clear affiliation and interconnectedness of those entities.

89. On April 2, 2019, the SBA's Office of Hearings and Appeals (OHA) issued a final decision affirming the size determination. Pursuant to 13 C.F.R. § 134.316(f), the decision may not be reconsidered. [Exhibit A, *Size Appeal of Par Hawaii Refining, LLC*, SBA No. SIZ-5989 (2019)].

90. On April 8, 2019, PAR HAWAII, by and through its agent, Jeffrey Cummins, and in response to the final size determination, finally changed its public self-certification and representation through SAM as other than a small business.

**Defendants' Fraudulent Misrepresentations/Concealment**

91. PAR HAWAII was ineligible for the 2017 and 2018 contracts because it did not qualify for the small business set aside at the time PAR HAWAII, under the direction and control of PAR PACIFIC and CHAI, submitted its offers and false self-certifications to DLA for either contract.

92.     At all times relevant herein, PAR HAWAII, PAR PACIFIC, and CHAI knew or had reason to know that PAR HAWAII did not qualify for the small business set aside and was not eligible for the contracts at the time PAR HAWAII, under the direction and control of PAR PACIFIC and CHAI, submitted its offers and false self-certifications to DLA for either contract.

93.     PAR HAWAII, PAR PACIFIC, and CHAI fraudulently concealed PAR HAWAII's ownership and affiliate information from, among others, the DLA, the SBA, 3DGS, and the public, in order to induce the DLA to award Defendant the 2017 and 2018 contracts and to prevent Plaintiff or others from timely filing a size protest in order to continue their fraudulent usurpation of business opportunities intended for benefit qualified small businesses.

94.     Plaintiff's professional reputation and ability to bid and successfully win government contracts hinges on a demonstration of past-performance. The wrongful usurpation of the contract opportunity by Defendants denied Plaintiff the reputational professional benefit of performing on a very lucrative contract that would have demonstrated plaintiff's professional capacity to execute. Performance would have enhanced plaintiff's future opportunities to win other lucrative contracts. As a direct and proximate result of Defendants' fraudulent conduct and concealment, 3DGS suffered reputational harm, lost customers, and lost profits that it would have otherwise earned from the 2017 and 2018 contracts.

### Threat of Continued Fraudulent Conduct

95.     After an adverse size determination, PAR HAWAII cannot self-certify as small under the same or lower size standard unless it is first recertified as small by an appropriate SBA Government Contracting Office.

96.     Thus, despite the finality of the decision, PAR HAWAII may seek recertification as a small business by SBA at any time in the future, so long as the request for recertification must be accompanied by a current completed SBA Form 355 and any other information sufficient to show a significant change in its ownership, management, or other factors bearing on its status as a small concern

97.     Because PAR HAWAII, failed or otherwise refused to produce necessary ownership and affiliate documentation to make a concrete final determination as to size, the adverse size determination as to PAR HAWAII does not prevent Defendants from attempting to recertify PAR HAWAII in the future, nor does it prevent any one of PAR PACIFIC's numerous subsidiaries and other affiliates from self-certifying as a small business with the need for recertification by SBA. Accordingly, a plausible threat of continued fraudulent activity exists in that PAR PACIFIC, under the control and direction of its largest shareholder, CHAI, can and will create another company, or use a company already in existence, to compete for small business contracts despite its ownership structure.

98.     As the lowest qualified bidder and qualified small business under the 2017 and 2018 contracts set forth above, Plaintiff should have been awarded the contracts.

## COUNT I
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO) VIOLATION [18 U.S.C. § 1962(c), (d)]

99.     Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

100.    Pursuant to 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

101.    Pursuant to  18 U.S.C. § 1964(d), it is unlawful "for any person to conspire to violate any of the provision of subsection …(c) of this section."

102.    The Act permits "[a]ny person inured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

103.   CHAI, PAR PACIFIC, and its subsidiaries, including PAR HAWAII, together, constitute an enterprise, associated in fact, whose activities affect interstate commerce. Defendants are employed by or associated with those enterprises.

104.   Defendants agreed to and did conduct and participate in the affairs of the enterprise referenced above through a pattern of racketeering activity in order to usurp opportunities from qualified small businesses by fraudulently self-certify PAR HAWAII as a small business and acquiring contracts specifically set aside for small business, including the 2017 and 2018 contracts set forth above, knowing that PAR HAWAII, together with affiliates, did not qualify as a small business.

105.   The enterprise uses their separate legal statuses and corporate structure to facilitate the racketeering activity in that its decision to operate through subsidiaries and a complicated web of affiliated businesses facilitates its unlawful activity.

106.   Defendants, together, and by virtue of their separate organizational structures, agreed together to wrongfully and fraudulently acquire small business contracts through PAR HAWAII, by concealing their true corporate structure and ownership, thereby preventing qualifying small businesses, including 3DGS, from obtaining those contracts, for the financial benefit of the enterprise and its members, including the family of billionaire, Sam Zell.

107.   Defendants further agreed to conceal PAR HAWAII's true ownership and affiliate information from the DLA, SBA, 3DGS, the public, and others, when it refused to provide such information as part of the size protest in order to protect the secrecy of this information.

108.   Pursuant to and in furtherance of their unlawful schemes, Defendants committed numerous related acts of mail fraud (as defined in 18 U.S.C. § 1341) and wire fraud (as defined in 18 U.S.C. § 1343) in that:

   a. Defendants used electronic means to carry out its fraudulent scheme, namely, PAR HAWAII, under the direction and control of PAR PACIFIC AND CHAI, electronically submitted false self-certification to the SBA and DLA in connection with its bid on the 2017 and 2018 contracts, knowing or with reason to know that it did not qualify for the small business set aside for either contract;

   b. For the purpose of executing or attempting to execute the above-referenced scheme or artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, defendants, jointly and severally, caused, induced, procured and aided and abetted the transmission by means of wire communication in interstate commerce, of monetary payments from the DLA to Defendants' bank or banks.

109.   Those acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

110.   Defendants have directly and indirectly conducted and participated in the conduct of the affairs of the enterprise referenced above through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

111.   Defendants knew that their actions were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

112.   As a direct and proximate result of defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff suffered damages, including, but not limited to, significant lost profits under the 2017 and 2018 contracts, loss of earning capacity, lost customers, and reputational harm arising from the loss of both contracts.

113.   As a further direct and proximate result of Defendant's fraudulent conduct, Plaintiff incurred costs and attorney's fees, and is entitled to treble damages under the Act.

114.   The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of others, and therefore warrants an award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT II
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

115.   Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

116.    Plaintiff and the DLA had an implied or informal contract that the DLA would fairly consider each bid in accordance with all applicable statutes. The statues require that DLA not consider information outside the bid procurement process.

117.    At all relevant times, Plaintiff is and was a a Service-Disabled Veteran-Owned Small Business.

118.    In both 2017 and 2018, after both parties' proposals were deemed technically acceptable, Plaintiff beat the best overall laid down price in the second round.

119.    As a qualified small business with a technically acceptable proposal and best laid down price, Plaintiff had a reasonable expectation of entering into a valid business relationship with the DLA.

120.    Defendants knew or had reason to know that Plaintiff had a reasonable expectation of entering into a valid business relationship with the DLA and that by submitting offers to the DLA for the 2017 and 2018 contracts, beating Plaintiff's best laid down price in the third round, and accepting both contract awards, knowing that PAR HAWAII did not qualify for either contract, they would prevent Plaintiff, a qualified small business, from entering into a valid business relationship with the DLA.

121. By these acts, Defendants purposely interfered with Plaintiff's reasonable expectation of entering into a valid business relationship with the DLA and prevented Plaintiff's legitimate expectancy from being fulfilled.

122. Further, by submitting false self-certifications that PAR HAWAII qualified as a small business and using its organization structure to facilitate their concealment of PAR HAWAII's ownership and affiliate information from the DLA, SBA, 3DGS, the public, and others, so as to prevent Plaintiff and others from acquiring the information necessary to timely file a size protest, Defendants purposely interfered with Plaintiff's reasonable expectation of entering into a valid business relationship with the DLA and prevented Plaintiff's legitimate expectancy from being fulfilled.

123. The expected relationship between Plaintiff and the DLA was actually disrupted in that Plaintiff was not awarded the 2017 or 2018 contracts and was deterred from timely filing a size protest both years.

124. As a direct and proximate result of Defendants' fraudulent representations, acts, and concealments set forth above, Plaintiff suffered damages, including, but not limited to, significant lost profits under the 2017 and 2018 contracts, loss of earning capacity, lost customers, and reputational harm arising from the loss of both contracts.

125. The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of others, and therefore warrants an award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT III
## FRAUDULDENT MISREPRESENTATION & CONCEALMENT

126. Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

127. Defendants concealed PAR HAWAII's ownership and affiliate information from the DLA, SBA, 3DGS, the public, and others and submitted false self-certifications that PAR HAWAII qualified as a small business when it knew or had reason to know, at the time the false self-certifications were made, that PAR HAWAII did not qualify as a small business based upon ownership and affiliation.

128. By intentionally concealing PAR HAWAII's ownership and affiliate information from the from the DLA, SBA, 3DGS, the public, and others, and submitting the false self-certifications, Defendants induced Plaintiff to relinquish its right to protest the bid award and/or prevented Plaintiff from filing a timely size protest pursuant to the 2017 or 2018 contracts due to the lack of information publicly available and intentionally concealed by Defendants.

129.   Defendants intended Plaintiff and others to rely on the false self-certifications and lack of publicly available information related to PAR HAWAII's ownership.

130.   Plaintiff justifiably relied on Defendant's false self-certification and concealment of ownership information when it failed to submit a size protest for the 2017 contract, and submitted an untimely size protest for the 2018 contact, which it otherwise would have timely submitted.

131.   But for Defendants' false self-certification and concerted concealment of PAR HAWAII's ownership and affiliate information, Plaintiff would have timely submitted its size protest.

132.   As the second-low bidder and qualifying small business, had Plaintiff timely submitted a time protest, Defendant would have been disqualified and Plaintiff would have been awarded both contracts.

133.   As a direct and proximate result of Defendants' fraudulent representations, acts, and concealments set forth above, Plaintiff suffered damages, including, but not limited to, significant lost profits under the 2017 and 2018 contracts, loss of earning capacity, lost customers, and reputational harm arising from the loss of both contracts.

134.   The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of others, and therefore warrants an award of

punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT IV
## CONSPIRACY

135.   Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

136.   Defendants, known and unknown, including PAR PACIFIC, PAR HAWAII, and CHAI, by and through its agents, maliciously, and with intent to wrongfully usurp opportunities specifically set-aside by law for qualified small businesses, agreed and conspired together, by the acts described above, to unfairly and fraudulently procure a monetary benefit to which they were not entitled and deprive Plaintiff of its reasonably anticipated profits in the contracts in question.

137.   In furtherance of the conspiracy, PAR HAWAII, through its agent, Mr. Cummins, under the direction and control of PAR PACIFIC AND CHAI, made the aforementioned fraudulent self-certification and submitted documentation in support of that false certification to the SBA, DLA, and others.

138.   As a direct and proximate result of Defendants' fraudulent representations, acts, and concealments set forth above, Plaintiff suffered damages, including, but not limited to, significant lost profits under the 2017 and 2018 contracts, loss of earning capacity, lost customers, and reputational harm arising from the loss of both contracts.

139.   The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of others, and therefore warrants an award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT VI
## UNJUST ENRICHMENT

140.   Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

141.   The Defendants were unjustly enriched by virtue of their fraudulent acts, misrepresentations, and concealments, as set forth above.

142.   The Defendants have unjustly retained the benefit of profits derived from the 2017 and 2018 contracts to Plaintiff's detriment.

143.   The Defendants' retention of profits arising from the contracts violates the fundamental principles of justice, equity, and good conscience.

**WHEREFORE**, Plaintiffs requests relief as hereinafter provided.

## PRAYER FOR RELIEF

A.     For compensatory damages in an amount to be proven at trial;

B.     For treble damages, equal to three times the compensatory damages suffered by Plaintiff, as a result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962;

C.     For reputational damages based on the loss of future capacity to compete, in an amount to be proven at trial;

D.    For punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct;

E.    For reasonable attorney's fees as provided by 18 U.S.C. § 1964(c);

F.    For costs of suit;

G.    For prejudgment interest; and

H.    For such further or additional relief as the court deems proper.


Dated: May 7, 2020          **THE LAW OFFICES OF HAYTHAM FARAJ**


By:    _____/s/ Haytham Faraj_____
       **HAYTHAM FARAJ, ESQ.**
       1935 W Belmont Ave.
       Chicago, IL 60657
       Tel: (312) 635-0800
       Fax: (202) 280-1039
       Email: haytham@farajlaw.com

       Attorneys for Plaintiff,
       3DGS, LLC