## IN THE UNITED STATES DISTRICT COURT

## FOR THE NOTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| 3DGS, LLC, a limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CHAI TRUST COMPANY, LLC d/b/a EQUITY GROUP INVESTMENTS, a limited liability company; PAR PACIFIC HOLDINGS, INC., a corporation; and PAR HAWAII REFINING, LLC, a limited liability company; and DOES 1-100.<br><br>Defendants. | CASE NO.: 19-cv-07524<br><br>Judge Manish S. Shah<br>Mag. Judge Young B. Kim |

### PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, 3DGS, LLC ("3DGS"), by and through its undersigned counsel, respectfully requests that this Court deny Defendant, CHAI TRUST COMPANY, LLC d/b/a EQUITY GROUP INVESTMENTS' ("Chai dba EGI") (Dkts. 41, 42), and PAR PACIFIC HOLDINGS, INC. ("Par Pacific") and PAR HAWAII REFINING, LLC's ("Par Hawaii") (collectively, "Par Defendants") (Dkts. 43, 44) Motions to Dismiss Plaintiff's First Amended Complaint. In support thereof, Plaintiff states as follows:

# **TABLE OF CONTENTS**

INTRODUCTION      3

ARGUMENT      6

  I.   STANDARD OF REVIEW      6

      A.  The Court Accepts All Well-Pled Allegations and True
and Draws All Reasonable Inferences in Favor of
Plaintiff Under Rule 12(b)(6)      6

      B.  Matters Outside of the Pleadings Should Be Stricken and Excluded

  II.  COUNT I: RICO      9

      A.  Section 1962(c)      10

          i.  Complaint Sufficiently Alleges A Distinct Association-in-Fact
Enterprise      10

          ii.  Complaint Sufficiently Alleges A Pattern of Racketeering
Activity      16

      B.  Section 1962(d)      20

      C.  Plaintiff's Alleged Failure to Allege Fraud With Necessary
Particularity      23

  III.  STATE LAW CLAIMS      23

      A.  Conspiracy      23

      B.  Unjust Enrichment      25

      C.  Tortious Interference With Prospective Economic
Advantage (Count II)      26

          i.  Plaintiff Alleges a Reasonable Expectation of A Future
Business Relationship      26

          ii.  Knowledge of Expectancy and Purposeful Interference      29

      D.  Fraudulent Misrepresentation/Concealment (Count III)      31

  IV.  REQUEST FOR LEAVE TO AMEND      37

CONCLUSION      38

## INTRODUCTION

The basic premise of the Complaint is that Defendants, working with each other and through a host of subsidiary entities which they control, engaged in a pattern of misconduct designed to usurp business opportunities from eligible small businesses when they knew or had reason to know that they did not qualify as a small business.

Plaintiff, 3DGS, alleges that it was harmed by Defendants' alleged scheme when Par Hawaii, under the direction and control of Par Pacific and Chai, submitted fraudulent self-certifications and unlawfully procured certain small-business set aside contracts from the DLA in both 2017 and 2018, which Plaintiff, an eligible Service-Disabled Veteran-Owned Small Business, would have otherwise been awarded. (Dkt. 35, ¶1). Although Plaintiff's damages are derived directly from the loss of these two particular contracts, Defendants' scheme to defraud the SBA, DLA, the Plaintiff, and other eligible small businesses was undoubtedly not limited to those two particular contracts. Plaintiff alleges that Par Pacific and Par Hawaii submitted fraudulent self-certifications on at least four different occasions over a two-year period (*Id.* at 37-40). Based on these self-certifications, which are filed for the purpose of obtaining small business contracts, one can easily infer that Plaintiff was not the only eligible small business that fell victim to Defendants' scheme.

And, while Defendant Chai would like to disclaim any involvement in the fraudulent scheme because it did not personally submit the self-certifications or personally bid on the small business contracts, plausible evidence suggests that Chai did in fact have direct control and management over the Par Defendants' actions and are just as liable as the Par Defendants for the alleged fraud. In fact, Chai lauds itself for making a "debt investment" in Delta Petroleum, who later changed its name to Par Pacific, and for "steward[ing] the company through bankruptcy."

(*Id.* at ¶¶ 25, 26). Chai further claims that it was "instrumental" in building Par Pacific's "management team, developing its acquisition strategy and a series of rights offerings." (*Id.* at ¶ 28). Based on other credible allegations laid out in the Complaint, (*see id.* at ¶¶ 21-36), Plaintiff's allegation that Chai "has successfully wrested control of PAR PACIFIC and PAR HAWAII by placing its own trusted agents and associates into positions of power within PAR PACIFIC, a holding company that wholly owns and controls PAR HAWAII," is more than plausible. (Dkt. 27). As is Plaintiff's allegation that, "on or before August 8, 2016, June 14, 2017, May 8, 2018, and May 24, 2018, PAR HAWAII and PAR PACIFIC, by and through their joint agent, Mr. Cummins, together with Mr. Sotir, Mr. Monteleone, and others, agreed with CHAI, by and through its agents, Mr. Pate, Mr. Silberman, and others, to publicly self-certify and represent PAR HAWAII through SAM as a small business concern engaged in petroleum refining (NAICS Code 324110) with a corresponding size standard of 1,500, knowing that PAR HAWAII, together with its affiliates, did not qualify as a small business." As Plaintiff alleges, "Defendants, together, and by virtue of their separate organizational structures, agreed together to wrongfully and fraudulently acquire small business contracts through PAR HAWAII, by concealing their true corporate structure and ownership, thereby preventing qualifying small businesses, including 3DGS, from obtaining those contracts, for the financial benefit of the enterprise and its members, including the family of billionaire, Sam Zell." (Dkt. 35, ¶ 106).

Chai need not do its own dirty work in order to be actively involved in or otherwise responsible for the alleged scheme. This is akin to El Chapo disclaiming responsibility for the rampant murders carried out on his behalf because he did not personally pull the trigger. Plaintiff implores this court to look past Chai's claim of ignorance propagated Chai. These arguments, though crafty, cannot and do not take away from Plaintiff's plausible allegations that Chai was

4

directly involved in the fraudulent schemes carried out by its underlings. Of course, being Par Pacific's largest shareholder (*Id.* at ¶¶ 14, 15, 97), the goal of this scheme is undoubtedly to make money. But at what cost?

When Congress enacted the Small Business Act of 1953, the Small Business Administration (SBA) was created and "directed to assist small businesses in gaining access to adequate capital and credit, obtaining a fair share of government procurement, and in obtaining competent managerial assistance." *Iconco v. Jensen Const. Co.*, 622 F.2d 1291, 1297 (8th Cir. 1980) (*quoting* Title II of Act July 30, 1953, ch. 282, 67 Stat. 232). In 1958, Congress "reaffirmed and strengthened" the Act, and declared that its purpose "was to: 'aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government . . . be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the over-all economy of the Nation.' " *Id.* (*quoting* 15 U.S.C. s 631(a)).

When a company owned by a *billionaire* is profiting from contracts specifically set-aside for *small business*, something isn't right. And our courts agree. "If a contract set aside for small businesses has been performed by a concern that is not small, the intent of Congress has not been advanced. Allowing an unsuccessful bidder to recover on unjust-enrichment and fraud theories, when the proof justifies such recoveries, is consistent with the salutary purpose of the Act. *Iconco v. Jensen Const. Co.*, 622 F.2d 1291, 1298 (8th Cir. 1980). And, although the SBA has already determined that Par Hawaii does not qualify as a small business, Par Hawaii is only one of dozens of subsidiaries that Defendants can use to facilitate their fraudulent scheme. (Dkt. 35,

¶¶ 12, 96, 97). As outrageous as these claims sound, they are plausible and backed by specific allegations. Whether or not Plaintiff's allegations ultimately prove to be true, they are plausible, reasonable, which is all that is required at the pleading stage. *Domanus v. Lewicki*, 779 F. Supp. 2d 739, 744–47 (N.D. Ill. 2011) (citing *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 855 (7th Cir.2009) ("To say that fraud has been *pleaded* with particularity is not to say that it has been *proved* (nor is proof part of the pleading requirement.")

Because Plaintiff pleads more than sufficient factual content in its Complaint to allow a reasonable inference the Defendants engaged in the conduct alleged, Defendant's motion to dismiss should be denied.

## ARGUMENT

### I.     STANDARD OF REVIEW

#### A.     The Court Accepts All Well-Pled Allegations and True and Draws All Reasonable Inferences in Favor of Plaintiff Under Rule 12(b)(6)

On a 12(b)(6) motion to dismiss, this court accepts all well-pled allegations as true and draws all reasonable inferences in favor of Plaintiff. *City Nat'l Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir.1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, if accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Defendants would have this Court hold Plaintiff to an impractical and nearly impossible pleading standard beyond those necessary to state its claims and the grounds showing entitlement to relief. *Twombly* acknowledged and expressly rejected this requirement. *Bell A. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Court made clear, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."

6

*Id.* Claims of fraud, however, are analyzed under Rule 9(b), which " 'requires a pleading to state with particularity the circumstances constituting fraud.... [This] ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Toulon v. Contl. Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014)). Nonetheless, while "a party must state with particularity the circumstances constituting fraud" under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Moreover, although the Seventh Circuit has rejected allegations of fraud made on information and belief in the context of Rule 9(b)'s particularly requirement, it does not apply to "the Rule's allowance of general allegations of intent." *Greene v. Mizuho Bank, Ltd.*, 206 F. Supp. 3d 1362, 1376–77 (N.D. Ill. 2016). Nor does it apply to allegations of conspiracy. See e.g., *Kohler Co. v. Kohler Intern., Ltd.*, 196 F. Supp. 2d 690, 695 (N.D. Ill. 2002) (An alleged conspiracy "is not a fraudulent act that must be alleged with particularity, just an agreement to do something unlawful.").

Finally, while "it is true that certain allegations relating to the alleged roles of [Chai and Par Pacific] are made on information and belief…, facts supporting these allegations are within these defendants' knowledge and are inaccessible to plaintiffs, and [ ] the complaint sufficiently sets forth the basis for plaintiffs' belief in the allegations made on information and belief." *Domanus v. Lewicki*, 779 F. Supp. 2d 739, 746–47 (N.D. Ill. 2011).

### B. Matters Outside of the Pleadings Should Be Stricken and Excluded.

The court cannot look to matters outside the complaint in deciding a motion to dismiss for failure to state a claim without treating it as one for summary judgment. *Kohler Co. v. Kohler Intern., Ltd.*, 196 F. Supp. 2d 690, 694 (N.D. Ill. 2002). Under Rule 12(b), when " 'matters

outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' " *Bohac v. West,* 85 F.3d 306, 311 (7th Cir.1996). At the pleading stage, Plaintiff's well-pled allegations are accepted as true. Accordingly, Plaintiff asks this Court to strike and/or exclude from consideration the exhibits attached to the "Par" Defendants' motion to dismiss, and any extraneous references made by any Defendant that are outside of the pleadings and not supported by credible evidence.

This request includes, but is not limited to, Defendant Chai's unsubstantiated claim that "Equity Group Investments, LLC ("EGI") is a distinct limited liability company from Chai Trust d/b/a Equity Group Investments." (Dkt. 42, fn. 2). As far as Plaintiff can tell, and alleges, "CHAI is registered as an LLC with the Illinois Secretary of State with the 'assumed name' of Equity Group Investments (EGI)." (Dkt. 35, ¶ 20); *See also* EXHIBIT 1. Plaintiff further alleges that, "[a]t all relevant times herein, CHAI operated and continues to operate under the assumed name of EGI, a purported 'division' of CHAI, who is legally responsible for all of the obligations and debts of EGI." (Dkt. 35, ¶23). Plaintiff can find no active legal entity by the name of Equity Group Investments, LLC, registered with the State of Illinois. *See* EXHIBIT 2. Thus, any reference by Plaintiffs in the Complaint to EGI expressly refer to and relate to Defendant Chai d/b/a EGI.

Chai's attempt to distinguish itself from "EGI," however, is exactly the type of conduct that led to the filing of this Complaint in the first place. If Chai's claim that EGI is "a distinct limited liability company from Chai Trust d/b/a Equity Group Investments" is true, this simply furthers Plaintiff's contention that the Defendants, through the alleged enterprise, use their

"separate legal statuses and corporate structure to facilitate" their fraudulent activity by "operat[ing] through subsidiaries and a complicated web of affiliated businesses" to conceal their true size and ownership. (Dkt. 35, ¶ 103). Plaintiff has no problem amending its complaint to add "Equity Group Investments, LLC" as a defendant if such entity exists. Perhaps "EGI" is a member of the association-in-fact enterprise. But this can and should be dealt with in discovery. Without actual evidence to contradict Plaintiff's assertions, Chai's attempt to distinguish itself from "EGI" should be wholly disregarded. Plaintiff's allegations, taken as true, are more than sufficient to state a plausible claim for relief against Defendants, including Chai, to move this case forward.

## II.     COUNT I: RICO

In Count I of the Complaint, Plaintiff alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968. Plaintiff has alleged violations of both 18 U.S.C. § 1962(c) and (d). Section 1962(c) of RICO provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

Section 1962(d) of RICO provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

*Id.* at § 1962(d).

Plaintiff has adequately alleged a civil RICO claim against all Defendants under both sections.

A. **Section 1962(c)**

To state a claim under § 1962(c), "a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Chen v. Mayflower Transit, Inc.*, 315 F. Supp. 2d 886, 900 (N.D. Ill. 2004) (quoting *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)). Defendants argue that Plaintiff's Section 1962(c) RICO claim should be dismissed because that Plaintiff has failed to plausibly allege (1) a distinct association-in-fact enterprise existed, and (2) a pattern of racketeering activity. Defendants' motions should be denied.

i. **Complaint sufficiently alleges a distinct association-in-fact enterprise**

By definition, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has repeatedly admonished that the term "enterprise," like the RICO statute itself, should be interpreted broadly. *See Boyle v. United States,* 556 U.S. 938, 944 (2009) ("[T]he very concept of an association in fact is expansive."); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497 (1985) ("RICO is to be read broadly.").

Plaintiff specifically alleged that "CHAI, PAR PACIFIC, and its subsidiaries, including PAR HAWAII, together, constitute an enterprise, associated in fact…" (Dkt. 35, ¶103). This association-in-fact between Chai, Par Pacific, and its subsidiaries, including Par Hawaii, meets the statutory definition of an "enterprise."

Liability under RICO, however, "depends upon a showing that two distinct entities exist: "(1) a 'person;' and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Chen v. Mayflower Transit, Inc.*, 315 F. Supp. 2d 886, 901 (N.D. Ill.

2004) (internal citations omitted). "There need be shown only some separate and distinct existence for the person and the enterprise." *Id.* (quoting *Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 964 (7th Cir.1996) (internal quotation marks omitted)).

Although Defendants argue that Plaintiff failed to adequately identify the RICO "person," (Dkt. 42, p. 15; Dkt. 44, p. 22), the "Par" Defendants admit that "[b]ecause Plaintiff has named each of Par Hawaii, Par Pacific, and Chai Trust as a defendant, presumably it intends to claim that each defendant is a RICO 'person.'" (Dkt. 44, p. 22). This assumption is correct. The RICO "persons" are the named Defendants: Par Hawaii, Par Pacific, and Chai d/b/a EGI. Plaintiff need not allege or separately identify the defendants as "persons."[1]

Defendants claim, nonetheless, that "this theory is not viable under RICO, because it collapses any distinction between the person and the enterprise." (Dkt. 44, p. 22; *See also* Dkt. 42, pp. 8-9). To the extent that Defendants' arguments are based solely on the fact that each Defendant is also named as a member of the association-in-fact enterprise, these arguments can be easily rejected.

As courts around the country have clearly held, "a plaintiff is free to name all members of an association-in-fact enterprise as individual defendants." *River City Markets, Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461–62 (9th Cir. 1992) (citing *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165–66 (3d Cir.1989) (upholding a complaint alleging that three defendant corporations formed an association-in-fact enterprise); *Fleischhauer v. Feltner,* 879 F.2d 1290, 1292 n. 1, 1296–97 (6th Cir.1989) (holding that plaintiffs adequately alleged an enterprise consisting of all the defendants), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 & 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990); *see also Haroco, Inc. v. American*

---

[1] If this court disagrees, however, Plaintiff seeks leave to amend its Complaint to more clearly identify the RICO "persons."

*Nat'l Bank & Trust Co.,* 747 F.2d 384, 401 (7th Cir.1984) ("In the association in fact situation, each participant in the enterprise may be a 'person' liable under RICO, but the association itself cannot be."); *United States v. Huber,* 603 F.2d 387, 394 (2d Cir.1979) (holding that a group of seven corporations could constitute a RICO enterprise), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)). Thus, any claim by the defense that the Complaint fails to allege a distinct association-in-fact enterprise merely because Plaintiff has identified the "enterprise" as the association-in-fact of the Defendant "persons," is without merit.

As for Defendants' alternative arguments regarding Plaintiff's failure to allege an "enterprise," our courts have held that "[t]he hallmark of an enterprise is 'structure.'" *Okaya (U.S.A.), Inc. v. Denne Industries, Inc.*, 00 C 1203, 2000 WL 1727785, at *4 (N.D. Ill. Nov. 21, 2000) (quoting *Richmond*, 52 F.3d at 645) (internal citations omitted). Structure is shown "by evidence of an ongoing organization, formal or information, and by evidence that the various associates function as a continuing unit." *U.S. v. Turkette,* 452 U.S. 576, 583 (1981); *see also Richmond,* 52 F.3d at 644 (describing enterprise as "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making") (citation omitted). As the Supreme Court explained in *Turkette*, and reiterated in *Boyle*, "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle v. U.S.*, 556 U.S. 938, 948 (2009).

Paragraphs 12-36 of Plaintiff's Amended Complaint, titled "Relationship Between Defendants" clearly sets forth the "structure" of "persons" (aka Defendants) associated through time, joined in purpose, and organized in a manner amendable to hierarchal or consensual decision-making.  Specifically, Plaintiff alleged:

- At all times relevant herein, PAR HAWAII is and was one of dozens wholly-owned subsidiaries of PAR PACIFIC. (Dkt. 35, ¶ 12).

- PAR PACIFIC is a publicly-traded and widely-held corporation with over 150 institutional investors collectively holding 68.73% of its 45,879,509 outstanding shares of common stock. (*Id.* at ¶ 13).
- At all times relevant herein, CHAI is and was PAR PACIFIC's single largest shareholder based on percentage. (*Id.* at ¶ 14).
- As of June 30, 2018, PAR PACIFIC's largest three shareholders were: CHAI with 28.44%; WhiteBox Advisors LLC with 8.52%; and Blackrock Inc. with 8.42%. No other shareholders held more than 5% of PAR PACIFIC. CHAI's holding is over three times larger than the next largest shareholder and has the power to control PAR PACIFIC based upon ownership. CHAI is therefore affiliated with Defendants for size determination purposes pursuant to 13 C.F.R § 121.103. (*Id.* at ¶ 15).
- Upon information and belief, DOES 1-100 have the power to control PAR PACIFIC (and therefore PAR HAWAII) based upon ownership and are therefore affiliated with Defendants for size determination purposes pursuant to 13 C.F.R. § 121.103. (*Id.* at ¶ 16).
- CHAI not only has the power to control PAR PACIFIC, but does in fact control PAR PACIFIC, who in turn controls PAR HAWAII. (*Id.* at ¶ 17).
- CHAI is a private company that administers trusts established for the benefit of members of Sam Zell's family and that serves as the Zell family office. (*Id.* at ¶ 18).
- Billionaire Sam Zell serves as the founder and chairman of Equity Group Investments (EGI), a purported division of CHAI, that provides investment management services on its behalf. (*Id.* at ¶ 19).
- CHAI is registered as an LLC with the Illinois Secretary of State with the "assumed name" of Equity Group Investments (EGI). (*Id.* at ¶ 20).
- At all times relevant herein, Mark Sotir (Mr. Sotir) served and continues to serve as the President of Equity Group Investments (EGI), and "employs his leadership inside and outside [the] firm," by managing and developing EGI's corporate investment team and deploying Mr. Zell's "active-ownership approach by engaging with portfolio company management to improve business strategies and operating structures, aligning all toward achieving optimum shareholder value." (*Id.* at ¶ 21).
- Mr. Sotir also serves as a Senior Managing Director of CHAI and serves on the board of EGI investment companies. (*Id.* at ¶ 22).
- At all relevant times herein, CHAI operated and continues to operate under the assumed name of EGI, a purported "division" of CHAI, who is legally responsible for all of the obligations and debts of EGI. (*Id.* at ¶ 23).
- At all relevant times herein, Scott Peppet (Mr. Peppet) served and continues to serve as the President of CHAI. (*Id.* at ¶ 24).
- In early 2001, EGI made a "debt investment" in Delta Petroleum, and subsequently "stewarded the company through bankruptcy." (*Id.* at ¶ 25).
- Delta Petroleum later changed its name to PAR PACIFIC. (*Id.* at ¶ 26).
- Since then, CHAI has successfully wrested control of PAR PACIFIC and PAR HAWAII by placing its own trusted agents and associates into positions of power within PAR PACIFIC, a holding company that wholly owns and controls PAR HAWAII. (*Id.* at ¶ 27).
- According to CHAI, "EGI was instrumental in building [PAR PACIFIC]'s management team, developing its acquisition strategy and a series of rights offerings." (*Id.* at ¶ 28).

- In 2015, one of EGI's senior investment managers, William Pate (Mr. Pate), was appointed as the Chief Executive Officer (CEO) of PAR PACIFIC. (*Id.* at ¶ 29).
- Mr. Pate has served and continues to serve as the President and CEO of PAR PACIFIC since 2015. (*Id.* at ¶ 30).
- Prior to becoming President and CEO of PAR PACIFIC and while serving on board of directors for PAR PACIFIC, Mr. Pate served as the Co-President of EGI and had been employed by EGI in "various capacities" since 1994. (*Id.* at ¶ 31).
- William Monteleone (Mr. Monteleone) has served and continues to serve as the Chief Financial Officer (CFO) of PAR PACIFIC since March 2017. Mr. Monteleone also served as the Vice President of Mergers and Acquisitions for PAR PACIFIC from February 2015 until February 2017, and as the CEO from June 2013 until 2015. (*Id.* at ¶ 32).
- Prior to becoming the CEO of PAR PACIFIC in 2013 and while serving as a Director of PAR PACIFIC beginning in 2012, Mr. Monteleone also served as the Vice President of EGI from 2008 until 2013. (*Id.* at ¶ 33).
- At all times relevant herein, Robert Silberman (Mr. Silberman) has served and continues to serve as both an Advisor for EGI and as Chairman of the Board of PAR PACIFIC. (*Id.* at ¶ 34).
- At all times relevant herein, Jim Yates (Mr. Yates) has served and continues to serve as the President of PAR HAWAII, a wholly-owned subsidiary of PAR PACIFIC. Mr. Yates served as the CEO and President of Mid Pac Petroleum, LLC (Mid Pac), from August 2007 until PAR PACIFIC's acquisition of Mid Pac, when PAR PACIFIC appointed Mr. Yates to serve as the President of PAR HAWAII. (*Id.* at ¶ 35).
- At all times relevant herein, Jeffrey Cummins (Mr. Cummins) served and continues to serve as the Director of Corporate Procurement at PAR PACIFIC and acted as an agent of PAR HAWAII when he repeatedly certified and represented PAR HAWAII as a small business, as set forth below. (*Id.* at ¶ 36).

Chai argues that the only "purpose" alleged in the Complaint "is Par Hawaii's desire to win a government contract, which is something Par Hawaii could have done on its own." (Dkt. 42, p. 15). This could not be further from the truth. Plaintiff has alleged more than sufficient facts to plausibly suggest that Chai, Par Pacific, and its subsidiaries, including Par Hawaii, operate as an ongoing structure of "persons" associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making. Among other pertinent allegations, Plaintiff alleges that "[t]he enterprise uses their separate legal statuses and corporate structure to facilitate the racketeering activity in that its decision to operate through subsidiaries and a complicated web of affiliated businesses facilitates its unlawful activity." (Dkt.

35, ¶ 105). And, that "Defendants, together, and by virtue of their separate organizational structures, agreed together to wrongfully and fraudulently acquire small business contracts through PAR HAWAII, by concealing their true corporate structure and ownership, thereby preventing qualifying small businesses, including 3DGS, from obtaining those contracts, for the financial benefit of the enterprise and its members, including the family of billionaire, Sam Zell." (Dkt. 35, ¶ 106).

Defendants argue, nonetheless, that the relationship between them is "simply garden-variety commercial relationships among a subsidiary, a publicly traded and widely-held parent corporation, and the parent corporation's largest shareholder." (Dkt. 44, p. 22-23; see also Dkt. 42, p. 15) ("Plaintiff relies on corporate affiliation and minority stock ownership, which are insufficient to show Chai Trust participated in the operation or management of the alleged associate[ion]-in-fact enterprise."). The relationship between these entities is anything but typical. A "minority" shareholder does not typically exercise the amount of control over its investments as has been alleged here. And, while Chai now disclaims any legitimate control over Par Pacific or Par Hawaii, Plaintiff has alleged, according to information found on Chai d/b/a EGI's own website, that "EGI was instrumental in building [PAR PACIFIC]'s management team, developing its acquisition strategy and a series of rights offerings." (Dkt. 35, ¶ 28). Read as a whole, Plaintiff's allegations are more than sufficient to plausibly allege that Chai, Par Pacific, and its subsidiaries, including Par Hawaii, joined together to create an association-in-fact enterprise for the purpose of wrongfully usurping opportunities from small businesses for financial gain.

And, any claim by Chai that Plaintiff failed to allege that it participated in, managed, or controlled the conduct of the enterprise's affairs is wholly contradicted by statements taken from Chai's own website and specifically alleged in the Complaint. (*See* Dkt. 36 ¶ 104). Specifically,

Plaintiff alleges that Mark Sotir, "served and continues to serve as the President of Equity Group Investments (EGI), and 'employs his leadership inside and outside [the] firm,' by managing and developing EGI's corporate investment team and deploying Mr. Zell's 'active-ownership approach by engaging with portfolio company management to improve business strategies and operating structures, aligning all toward achieving optimum shareholder value.' (Dkt. 35, ¶21). Mr. Sotir simultaneously "serves as a Senior Managing Director of CHAI and serves on the board of EGI investment companies."  (Dkt. 35, ¶22). These specific allegations are more than sufficient to raise a reasonable inference that Chai d/b/a EGI directly controls, manages, and participates in the affairs of the enterprise consisting of itself, Par Pacific and its subsidiaries, including Par Hawaii.

To the extent this Court believes that Plaintiff has failed to adequately plead an "enterprise" distinct from the Defendant "persons," however, Plaintiff asks this Court to allow it to conduct limit discovery on the matter. See *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 805 (7th Cir. 2008).

## ii.  Complaint sufficiently alleges a pattern of racketeering activity

Next, Defendants argue that Plaintiff has failed to sufficiently allege any pattern of racketeering activity. (Dkt. 42, pp. 16-18, Dkt. 44, p. 24-27). "A pattern of racketeering activity consists, at the very least, of two predicate acts of racketeering committed within a ten-year period." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 659 (7th Cir. 2015) (quoting *Jennings v. Auto Meter Products, Inc.,* 495 F.3d 466, 472 (7th Cir.2007)), citing 18 U.S.C. § 1961(5). "This may be shown by proof of a series of related predicate acts extending over a substantial period of time." *Phoenix Bond & Indem. Co. v. Bridge*, 911 F. Supp. 2d 661, 672–73 (N.D. Ill. 2012) *(quoting H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 242 (1989)).

Here, Plaintiff alleges that it was harmed by Defendants' racketeering activity on *two* separate, specific occasions. Specifically, Plaintiff alleges that "[p]ursuant to and in furtherance of their unlawful schemes, Defendants committed numerous related acts of mail fraud (as defined in 18 U.S.C. § 1341) and wire fraud (as defined in 18 U.S.C. § 1343) in that:

> a. Defendants used electronic means to carry out its fraudulent scheme, namely, PAR HAWAII, under the direction and control of PAR PACIFIC AND CHAI, electronically submitted false self-certification to the SBA and DLA in connection with its bid on the 2017 and 2018 contracts, knowing or with reason to know that it did not qualify for the small business set aside for either contract;

> b. For the purpose of executing or attempting to execute the above-referenced scheme or artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, defendants, jointly and severally, caused, induced, procured and aided and abetted the transmission by means of wire communication in interstate commerce, of monetary payments from the DLA to Defendants' bank or banks.

(Dkt. 35, ¶ 108).

Those acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5). (Dkt. 35, ¶ 109).

But these are not the only other predicate acts of wire fraud outlined in the Complaint. While a plaintiff may use predicate acts targeting other victims to show evidence of a "pattern" of racketeering, the plaintiff needs only to be injured by a single predicate act committed in furtherance of the scheme. *See Sedima*, S.P.R.L., 473 U.S. at 488-93; *Deppe v. Tripp*, 863 F.2d 1356, 1366-67 (7th Cir. 1988); *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809-10 (7th Cir. 1987); *Corley v. Rosewood Care Ctr., Inc.*, 388 F.3d 990, 1004 (7th Cir. 2004).

Plaintiff specifically alleges at least another four instances of wire fraud over a two-year period, in which a joint agent of Par Hawaii and Par Pacific, under the direction and control of Par Pacific and Chai, certified Par Hawaii as a small business. (Dkt. 35, ¶¶ 37-41). The undeniable purpose of self-certifying as a small business is to compete for small business contracts. A

reasonable inference, therefore, is that Defendants repeatedly certified Par Hawaii as a small business in order to bid for small business contracts for which they did not qualify. Regardless of whether Par Hawaii was awarded any of these other small business contracts, which can be determined in discovery, they engaged in a clear pattern of racketeering activity by these multiple acts of mail and/or wire fraud, designed to usurp opportunities specifically set-aside for qualified small businesses, and did in fact usurp at least two separate opportunities from the Plaintiff.

Defendants claim, nonetheless, that the predicate acts alleged do not establish a "pattern" because Plaintiff has not alleged any "threat of continued racketeering activity." (Dkt. 42, pp. 11-12; Dkt. 44, pp. 24-26). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 241 (1989) (quoting *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (CA3 1987). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 242 (1989). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.*

The open-ended continuity test, on the other hand, exists because RICO actions are "[o]ften…brought before continuity can be established in this way, … [i]n such cases, liability depends on whether the *threat* of continuity is demonstrated." *Id.* (*citing* S.Rep. No. 91–617S.Rep. No. 91–617, at 158). In these cases, "[t]hough the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the

requisite threat of continuity." *Id.* "In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* "Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Id.* at 242-43.

Defendants argue that because the SBA has already determined that Par Hawaii is "other than small," and that Plaintiff has alleged that decision is "final" unless recertified by the SBA, Plaintiff cannot allege that any threat of future harm exists. But Plaintiff specifically alleges that "[b]ecause PAR HAWAII, failed or otherwise refused to produce necessary ownership and affiliate documentation to make a concrete final determination as to size, the adverse size determination as to PAR HAWAII does not prevent Defendants from attempting to recertify PAR HAWAII in the future, nor does it prevent any one of PAR PACIFIC's numerous subsidiaries and other affiliates from self-certifying as a small business with the need for recertification by SBA." (Dkt. 35, ¶ 97). "Accordingly, a plausible threat of continued fraudulent activity exists in that PAR PACIFIC, under the control and direction of its largest shareholder, CHAI, can and will create another company, or use a company already in existence, to compete for small business contracts despite its ownership structure." (Dkt. 35, ¶ 99). These allegations are sufficient and "whether these multiple acts of alleged mail and wire fraud constitute a 'pattern of racketeering activity,' is a question of fact," which must depend on the evidence at trial. *John C. Holland v. J.P. Mascaro Sons*, 653 F. Supp. 1242 (E.D. Va. 1987) (citing *Sedima*, *S.P.R.L.*, 105 S.Ct. at 3285 n. 14). Accordingly, Defendants' motions to dismiss should be denied[2].

---

[2] Since the filing of the Amended Complaint, Plaintiff has discovered additional evidence that shows that Defendants have actually continued their unlawful activity by certifying another one of Par Pacific's

B. **Section 1962(d)**

In addition to Plaintiff's claims under § 1962(c), Plaintiff alleges that Defendants violated § 1962(d), which makes it "unlawful for any person to conspire to violate any of the [substantive RICO provisions]." 18 U.S.C. § 1962(d). "Proof of a conspiracy within the scope of RICO requires a showing that: (1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *United Food and Com. Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013) (quoting *DeGuelle v. Camilli,* 664 F.3d 192, 204 (7th Cir.2011)) (internal quotations omitted). "The plaintiff does not need to allege that each conspirator agreed to commit (or actually committed) two or more predicate acts." *Crimson Galeria LP v. Healthy Pharms, Inc.*, 337 F. Supp. 3d 20, 41 (D. Mass. 2018) (emphasis added) (citing *Salinas v. United States*, 522 U.S. 52, 64-65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion.")). "No overt act is required." *Id.* (citing Salinas, 522 U.S. at 64. "[A] defendant may be part of a RICO conspiracy even if he has not committed a substantive RICO violation." *Id.* (internal citations omitted). As the Seventh Circuit has explained,

---

subsidiaries, Mid Pac Petroleum (d/b/a PAR HAWAII), referred to in ¶ 35 of Plaintiff's Complaint, as a small business, demonstrating the clear and obvious threat of continued fraudulent activity. Thus, if this court believes that Plaintiff's allegations regarding a threat of future harm are insufficient to allege a reasonable inference that Defendants engaged – and continue to engage – in a "pattern of racketeering activity," Plaintiff seeks leave to amend the Complaint to add these specific allegations of a continued threat of harm, not just to Plaintiff, but to other eligible small businesses whose opportunity to compete for these contracts specifically set-aside for small business has been wrongfully taken from them.

"the touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *United Food and Com. Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013) (quoting *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 732 (7th Cir.1998)) (internal quotations omitted).

Plaintiff specifically alleges, albeit on information and belief, that "on or before August 8, 2016, June 14, 2017, May 8, 2018, and May 24, 2018, PAR HAWAII and PAR PACIFIC, by and through their joint agent, Mr. Cummins, together with Mr. Sotir, Mr. Monteleone, and others, agreed with CHAI, by and through its agents, Mr. Pate, Mr. Silberman, and others, to publicly self-certify and represent PAR HAWAII through SAM as a small business concern engaged in petroleum refining (NAICS Code 324110) with a corresponding size standard of 1,500, knowing that PAR HAWAII, together with its affiliates, did not qualify as a small business." (Dkt. 35, ¶ 41). Plaintiff has set forth elsewhere in the complaint, the basis for its belief regarding these allegations. (*See e.g.*, Dkt. 35, ¶ 37-40) (detailing specific dates, within a two-year period, wherein Mr. Cummins, a joint agent of both Par Hawaii and Par Pacific, submitted four separate fraudulent self-certifications on Par Hawaii's behalf).  These allegations, taken in context, are more than sufficient to allege a claim that is plausible on its face.

Although the Chai Defendants would like this court to discount any allegations made upon "information and belief," "'[a] conspiracy, by nature, is secretive, and therefore the agreement is rarely established by direct proof.'" *DAN Jt. Venture III, L.P. v. Touris*, 598 B.R. 430, 447–48 (N.D. Ill. 2019) (quoting *Farwell v. Senior Servs. Assocs., Inc.,* 361 Ill.Dec. 49, 970 N.E.2d 49, 58 (Ill. App. Ct. 2012)). "It is usually established 'from circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of

21

persons in similar circumstances.'" *DAN Jt. Venture III, L.P. v. Touris*, 598 B.R. 430, 447–48

(N.D. Ill. 2019) (quoting *In re Hearthside Baking Co., Inc.*, 402 B.R. 233, 251-52 (Bankr. N.D.

Ill. 2009) (quoting *Adcock*, 206 Ill.Dec. 636, 645 N.E.2d at 895). Thus, as explained above,

allegations of conspiracy need not meet Rule 9(b)'s heightened pleading standard.

As numerous courts have acknowledged, "to the extent this argument is construed to fault

Plaintiff for failing to allege a specific verbal or written agreement between the Defendant

organizations …, it should also be rejected." *Home Quarters Real Est. Group, LLC v. Michigan

Data Exch., Inc.*, CIV. 07-12090, 2009 WL 276796, at *4 (E.D. Mich. Feb. 5, 2009). "Plaintiff

cannot be expected to make this showing at the pleading stage." *Id.* (citing *In re Southeastern

Milk Antitrust Litigation,* 2008 WL 2117159, *12 FN 7, (E.D.Tenn.2008) ("The level of factual

pleading" sought by the defendant "could rarely, if ever, be met by a plaintiff in an antitrust case

before discovery.") Even at the summary judgment stage, "a conspiracy may be demonstrated by

direct or circumstantial evidence." *Re/Max Intern., Inc. v. Realty One, Inc.,* 173 F.3d 995, 1009

(6th Cir.1999).

Even if this Court discounts Plaintiff's allegations made on information and belief,

Plaintiff has pled more than sufficient circumstantial evidence from which a reasonable jury

could infer that an agreement to commit the underlying tortious acts was formed. Thus, any

claim by Defendant Chai that they did not personally commit any of the underlying tortious acts

in furtherance of the conspiracy is irrelevant. In fact, Chai does not even mention Plaintiff's §

1962(d) conspiracy allegation in its motion to dismiss. Thus, at least as to Defendant Chai, it has

waived any argument that Plaintiff's § 1962(d) RICO claim should be dismissed. Regardless,

Plaintiff has alleged more than sufficient facts to plausibly suggest that Chai agreed to and did

conspire with Par Pacific and Par Hawaii to violate Section 1962(c) of the RICO statute.

### C. **Plaintiff's Alleged Failure to Allege Fraud With Necessary Particularity**

`        To the extent that Chai argues that Plaintiff's RICO claim generally fails to satisfy Rule

9(b)'s particularity requirement without reference to any particular element (Dkt. 42, p. 18), this

argument should be rejected. "Rule 9 sets forth the pleading standard that applies to certain

elements of certain claims. It is not a stand-alone pleading requirement." *DAN Jt. Venture III,*

*L.P. v. Touris*, 598 B.R. 430, 449 (N.D. Ill. 2019). Accordingly, this argument "does not warrant

any further discussion." *Id.*

## III.     STATE LAW CLAIMS

Courts have long held that "Congress, by enacting the Small Business Act, did not

preempt the field so as to preclude a state cause of action based upon the Act as a standard in

determining whether the actions of fraud, unjust enrichment or interference with a business

relationship are available to a second low bidder against a low successful bidder of a federal

contract when the latter has misrepresented itself as a small business." *Tectonics, Inc. of Florida*

*v. Castle Constr. Co.*, 753 F.2d 957, 964 (11th Cir. 1985). Thus, in addition to Plaintiff's RICO

claim against all Defendants, Plaintiff alleges claims for fraudulent misrepresentation, tortious

interference, unjust enrichment, and conspiracy to commit these underlying torts against all

Defendants.

### A. **Conspiracy (Count IV)**

"Under Illinois law the elements of a civil conspiracy are: (1) a combination of two or

more persons (2) for the purpose of accomplishing, by some concerted action, either an unlawful

purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the

conspirators committed an overt tortious or unlawful act." *DAN Jt. Venture III, L.P. v. Touris*,

598 B.R. 430, 447 (N.D. Ill. 2019) (quoting *Martinez v. Freedom Mortg. Team, Inc.*, 527

F.Supp.2d 827, 839 (N.D. Ill. 2007) (citing *Fritz v. Johnston,* 209 Ill.2d 302, 282 Ill.Dec. 837, 807 N.E.2d 461, 470 (2004)).

First, Defendants argue that Illinois does not recognize civil conspiracy as an independent tort or "stand-alone" claim. (Dkt. 44, p. 35; Dkt. 42, p. 23). As Defendants admit, however, Plaintiff's conspiracy claim, like its unjust enrichment claim, *does not* stand alone. It is "premised on Plaintiff's underlying…fraud-based allegations…" (Dkt. 42, p. 23). "The function of a [civil] conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62, 206 Ill.Dec. 636, 645 N.E.2d 888 (1994).

As the Par Defendants admit, while Chai intentionally ignores, "*every conspirator is responsible for others' acts within the scope of the agreement…*" (Dkt. 44, p. 34) (quoting *Bank of Am., N.A., v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (emphasis added). At the pleading stage, however, Plaintiff's allegations of an agreement between the Defendants to commit the tortious acts outlined therein, are sufficient. Moreover, an alleged conspiracy "is not a fraudulent act that must be alleged with particularity, just an agreement to do something unlawful." *Kohler Co. v. Kohler Intern., Ltd.*, 196 F. Supp. 2d 690, 695 (N.D. Ill. 2002). But see *DAN Jt. Venture III, L.P. v. Touris*, 598 B.R. 430, 448 (N.D. Ill. 2019) (quoting Fed. R. Civ. P. 9(b) ("[E]ven though civil conspiracy claims are subject to Rule 9(b)'s heightened pleading standard, '[m]alice, intent, knowledge, and other conditions of a person's mind' can be alleged generally." Defendants want to try this matter at the pleading stage to prevent the truth from coming out. To prevent discovery from being answered and the fraud being exposed. To prevent the real veteran-owned small business from recovering what it deserves.

As discussed above, Plaintiff has alleged sufficient facts to plausibly suggest an agreement between the Defendants to carry out the alleged fraudulent schemes. Moreover, because Defendants' state law claims against Defendant Chai are based primarily on the alleged conspiracy between all three Defendants to commit the underlying tortious acts, Plaintiff need not allege that Chai itself committed the tortious acts, but only that "an overt act was performed by one of the parties pursuant to and in furtherance of their agreement. See *Reuter v. MasterCard International, Inc.*, 397 Ill. App. 3d 915 (2010); *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 920 (1999). Plaintiff's allegations are sufficient.

And, as the Par Defendants begrudgingly admit, "[t]here are specific (albeit conclusory[3]) allegations that Par Hawaii—as opposed to Par Pacific or Chai Trust—committed allegedly fraudulent acts." Contrary to Par Pacific's assertion, however, Plaintiff contends that Par Pacific was, in fact, directly involved in the submission of the fraudulent self-certification. *See e.g.*, Dkt. 35, ¶ 36 ("At all times relevant herein, Jeffrey Cummins (Mr. Cummins) served and continues to serve as the Director of Corporate Procurement at PAR PACIFIC and acted as an agent of PAR HAWAII when he repeatedly certified and represented PAR HAWAII as a small business, as set forth below."). Regardless of whether Par Pacific was involved in the commission of the underlying tortious acts or was merely a co-conspirator, however, Plaintiff's allegations are sufficient to state a claim for conspiracy, so long as the underlying claims are sufficiently pled.

### B. <u>Unjust Enrichment (Count V)</u>

Defendants' arguments regarding Plaintiff's unjust enrichment claim are identical to its arguments regarding Plaintiff's conspiracy claim. Because Plaintiff does not dispute that its unjust enrichment claim is based on its underlying claims against Defendants, and because Defendants

---

[3] It is difficult to discern how an allegation can be simultaneously specific and conclusory.

do not argue that Plaintiff has failed to sufficiently allege the elements of unjust enrichment, Plaintiff's unjust enrichment claim should likewise survive because Plaintiff's underlying claims are sufficiently pled, as set forth below.

### C. Tortious Interference With Prospective Economic Advantage (Count II)

"To succeed in an action for tortious interference with prospective economic advantage under Illinois law, the plaintiff must prove: (1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." *DAN Jt. Venture III, L.P. v. Touris*, 598 B.R. 430, 448 (N.D. Ill. 2019).

Defendants, and each of them, argue that Plaintiff failed to allege: (1) that Plaintiff had a reasonable expectation of a future business relationship with the DLA, (2) that Defendant had knowledge of Plaintiff's expectancy, and (3) that Defendants purposefully interfered with it. (Dkt. 42, pp. 21-22; Dkt. 44, pp. 28-31). Contrary to Defendants' assertions, however, Plaintiff has adequately alleged a claim for tortious interference with prospective economic advantage against all Defendants.

### i. Plaintiff alleges a reasonable expectation of a future business relationship

First, Defendants argue that the Complaint fails to adequately allege that Plaintiff had a reasonable expectation of entering into a valid business relationship with the DLA. (Dkt. 42, pp. 21-22; Dkt. 44, pp. 28-29). Defendants rely on *U.S. ex rel. Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 931 (N.D. Ill. 2015) for the proposition that "a mere hope" of successfully bidding is not a "protectable interest" and Plaintiff must establish an "*ex ante* expectancy of winning" the bid. Dkt. 42, p. 21; Dkt. 44, p. 28.

In *Blaum*, the court found that "[b]ecause it was a blind bid (i.e., where all bidders submitted anonymous bids), all competitors theoretically had an equal expectancy of winning the contract." *U.S. ex rel. Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 931 (N.D. Ill. 2015). Plaintiff's allegations that it was a "highly qualified bidder" and that it "ultimately had the lowest 'legitimate' bid" was insufficient as an "*ex post* observation that says nothing of [plaintiff's] pre-bid expectations." *Id.* The court went on to explain that "[b]ecause this was a blind bidding process where the contract would go to the lower bidder, [plaintiff] has a tough row to hoe to establish an ex ante expectancy of winning—perhaps if [plaintiff] had a long history of underbidding its competitors (which presupposes that [plaintiff] knew who its competitors were pre-bid), or if Hot Shots had been the only bidder." The court found, therefore, that the plaintiff "failed to plead any basis for its expectation of success." *Id.* Defendants' reliance on *Blaum* is misplaced.

Plaintiff does not allege "a mere hope" of successfully bidding. Unlike in *Blaum*, Plaintiff does not allege that the bidding process was "blind." On the contrary, Plaintiff very specifically lays out the process, which includes multiple rounds and opportunities to beat the best overall laid down price. Specifically, Plaintiff alleged that "[i]n both 2017 and 2018, after both parties' proposals were deemed technically acceptable, Plaintiff beat the best overall laid down price in the second round." (Dkt. 35, ¶ 118), that "[n]o other offer was within the competitive range, (Dkt. 35, ¶¶ 53, 64), and that "[a]s a qualified small business with a technically acceptable proposal and best laid down price, Plaintiff had a reasonable expectation of entering into a valid business relationship with the DLA." (Dkt. 35, ¶ 119).

Defendants further argue, nonetheless, that "Plaintiff's allegation that it was the second-low bidder (AC ¶¶ 55, 66) also is insufficient," because Plaintiff does not allege that it "had ever won such a contract in the past, or that it had any basis for expecting to be successful in its bid."

(Dkt., 42, p. 29; *See also* Dkt. 42, p. 22 ("Plaintiff does not plead that it was informed it would have won the bids, nor that it has ever won an Agency bid.")). Thus, Defendants argue, Plaintiff has failed to plead "any facts supporting a reasonable inference that whatever expectation Plaintiff had was reasonable." (Dkt. 44, p. 29). Contrary to Defendants' assertions, Plaintiff specifically alleged that "Plaintiff and the DLA had an implied or informal contract that the DLA would fairly consider each bid in accordance with all applicable statutes, … [which] require that DLA not consider information outside the bid procurement process." (Dkt. 35, ¶116). Accordingly, any claim that Plaintiff has failed to allege it has never won such a contract in the past is without merit.

Moreover, as courts considering this question in the specific context of small business set-aside contracts have held, "[t]he more logical approach, in our view, is to put the unsuccessful bidder to its proof; if it proves by a preponderance of the evidence that it would have received the contract award absent the successful bidder's wrongdoing, we find no persuasive reasons why recovery should be denied." *Iconco v. Jensen Const. Co.*, 622 F.2d 1291, 1300 (8th Cir. 1980).

In *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 761 (7th Cir. 2011), regular bidders at county's auctions of tax liens sued competitor and its principal under RICO and a supplemental claim for intentional interference with a business opportunity, in violation of Illinois common law. Plaintiffs alleged that competitor had engaged in pattern of mail fraud by lying to county about its violating county's single-bid-per-parcel rule. The district court granted summary judgment in favor of defendants. Bidders appealed. The Seventh Circuit reversed the district court's ruling as to both claims.

The district court initially dismissed the plaintiffs' claim of intentional interference on that ground that the plaintiffs, the unsuccessful bidders, "cannot prove that they had an actual

expectancy of winning a specific lien." The Seventh Circuit reversed and remanded, finding that plaintiffs have an actual expectancy of winning a specific lien in that "[t]he plaintiff's business expectancy was the expectancy of receiving liens from their owner, the County, at auctions uncontaminated by fraud by competing bidders." *Id.* The same concept applies here.

Plaintiff's allegations are more than sufficient to allege that Plaintiff had a reasonable expectancy of entering into a valid business relationship with the DLA.

### ii. Knowledge of expectancy and purposeful interference

The "Par" Defendants argue that Plaintiff fails to adequately allege that Defendants "knew of Plaintiff's alleged expectancy, or that Par Defendants intentionally interfered with such an expectancy." (Dkt. 44, p. 29; *See also* Dkt. 42, p. 22). Defendants further argue that Plaintiff failed to allege that any of them "interacted with Plaintiff, knew Plaintiff was submitting a bid, or knew what price Plaintiff would offer…" (Dkt. 44, p. 29) (citing *e.g.*, *DAN Joint Venture III, L.P. v. Touris*, 598 B.R. 430, 448 (N.D. Ill. 2019)). Defendant Chai takes this argument one step further, claiming that Plaintiff has failed to allege that it "knew anything about the Plaintiff" at all. (Dkt. 42, p. 22).

Convenient as this argument may be, Defendants need not specifically "know of" Plaintiff to purposefully interfere with its reasonable expectation entering into a valid business relationship. This is particularly true where, as here, Plaintiff has alleged that Defendants conspired to fraudulently self-certify Par Hawaii as a small business and bid on certain government contracts specifically set-aside for small business, knowing that its false self-certifications and bid submission would interfere with the expected relationship between the DLA and *any* legitimate small business, including Plaintiff.

In *Phoenix Bond & Indem. Co. v. Bridge*, 911 F. Supp. 2d 661 (N.D. Ill. 2012), for example, bidders at the county's tax-lien auctions sued competitors under RICO, alleging that competitors had engaged in pattern of mail fraud by submitting false certifications that competitors were not related to other bidders, which allowed competitors to acquire liens for which they were ineligible, which otherwise would have been acquired by plaintiffs. After a jury returned a verdict in favor of plaintiffs on its RICO violation and tortious interference claims, defendants moved for judgment as a matter of law (JMOL). Defendants argued that the evidence did not support a finding of that defendants intentionally interfered with plaintiff's prospective contractual relationship because, "plaintiffs did not prove that defendants even knew plaintiffs existed or that they sought to harm plaintiffs." *Phoenix Bond & Indem. Co. v. Bridge*, 911 F. Supp. 2d 661, 673 (N.D. Ill. 2012). The court flatly rejected this argument, explaining as follows:

> The conduct that plaintiffs alleged and that the evidence permitted the jury to find involved defendants having multiple related bidders at the auctions so that they could garner more liens than they otherwise would have. The evidence permitted the jury to find that this prevented plaintiffs from obtaining as many liens as they otherwise would have obtained and that defendants knew their actions had this effect on other bidders. The fact that defendants may not have specifically targeted the plaintiffs is of no consequence…

*Phoenix Bond & Indem. Co. v. Bridge*, 911 F. Supp. 2d 661, 673 (N.D. Ill. 2012).

Here, like in *Phoenix Bond & Indem. Co. v. Bridge*, "[t]he fact that defendants may not have specifically targeted the plaintiffs is of no consequence." *Id.* Plaintiff need not specifically allege that Defendants "knew anything about the Plaintiff, knew about Plaintiff's alleged specific business expectancy, or even knew that Plaintiff was bidding for either contract" (Dkt. 42, p. 22) where they knew that their false submission of bids and acceptance of the bid award would interfere with the reasonable expectation of a legitimate small business. Plaintiff specifically alleged that "Defendants knew or had reason to know that Plaintiff had a reasonable expectation of entering into a valid business relationship with the DLA and that by submitting offers to the

DLA for the 2017 and 2018 contracts, beating Plaintiff's best laid down price in the third round, and accepting both contract awards, knowing that PAR HAWAII did not qualify for either contract, they would prevent Plaintiff, a qualified small business, from entering into a valid business relationship with the DLA." (Dkt. 35, ¶120). Plaintiff further alleged that, "[b]y these acts, Defendants purposely interfered with Plaintiff's reasonable expectation of entering into a valid business relationship with the DLA and prevented Plaintiff's legitimate expectancy from being fulfilled. (Dkt. 35, ¶121). These allegations are sufficient.

### D. <u>Fraudulent Misrepresentation/Concealment (Count III)</u>

To state a claim for fraudulent misrepresentation, a plaintiff generally must allege: (1) a false statement of material fact; (2) known or believed to be false by the parson making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance upon the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Toulon v. Contl. Cas. Co.*, 877 F.3d 725, 734–35 (7th Cir. 2017). Similarly, to state a claim for fraudulent misrepresentation based on omission (fraudulent concealment), a plaintiff generally must allege "that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Toulon v. Contl. Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017) (quoting *Connick*, 174 221 Ill.Dec. 389, 675 N.E.2d at 593) (internal quotations omitted).

Defendants argue that Plaintiff's claim for fraudulent misrepresentation and concealment fails because the Complaint fails to allege: (1) misrepresentation with "specificity"; (2) that Defendants intended to induce Plaintiff to act or otherwise rely on their misrepresentations/false self-certifications; and (3) that Plaintiff justifiably relied on the misrepresentations/false self-certifications. (Dkt. 42, pp. 19-21; Dkt. 44, pp. 31-33). Regardless, and despite Defendants' assertions to the contrary, Plaintiff sufficiently alleged each element of this claim.

31

The Par Defendants do not dispute that Plaintiff adequately alleged that Defendants' made a false statement of material fact or concealment of a material fact that they were under a duty to disclose. (Dkt. 44, p. 31). Defendant Chai, however, claims that Plaintiff failed to allege any details "related to the purported false statement by Chai Trust that caused Plaintiff to do anything." (Dkt. 42, p. 19). Despite Defendants' claims, Plaintiff alleges that "Defendants concealed PAR HAWAII's ownership and affiliate information from the DLA, SBA, 3DGS, the public, and others and submitted false self-certifications that PAR HAWAII qualified as a small business when it knew or had reason to know, at the time the false self-certifications were made, that PAR HAWAII did not qualify as a small business based upon ownership and affiliation." (Dkt. 35, ¶127). Plaintiff further alleged that "[b]y intentionally concealing PAR HAWAII's ownership and affiliate information from the from the DLA, SBA, 3DGS, the public, and others, and submitting the false self-certifications, Defendants induced Plaintiff to relinquish its right to protest the bid award and/or prevented Plaintiff from filing a timely size protest pursuant to the 2017 or 2018 contracts due to the lack of information publicly available and intentionally concealed by Defendants." (Dkt. 35, ¶128).

Finally, Chai argues that Plaintiff "continues to fail to allege reasonable reliance on any statement made by Chai to its detriment." Again, Chai fails to acknowledge that Plaintiff's state law claims against it are based on a conspiracy theory. With regard to the Par Defendants, Plaintiff's allegations are likewise sufficient.

Justifiable or reasonable reliance has been explained as follows:

In determining whether a party justifiably relies on another's representations, all of the circumstances surrounding the transactions, including the parties' relative knowledge of the facts available, opportunity to investigate the facts and prior business experience, will be taken into consideration. Only where the parties do not have equal knowledge, or access thereto, or where there are other peculiar circumstances inducing the injured party to rely

solely on the representation of the other will a person be found to have justifiably relied upon the others' representations.

*Runnemede Owners, Inc. v. Crest Mortgage. Corp.,* 861 F.2d 1053, 1058 (7th Cir.1988)

(quoting *Luciani v. Bestor,* 106 Ill.App.3d 878, 884 (3d Dist.1982)); *see also Soules,* 79 Ill.2d at

286; *Chicago Export Packing Co. v. Teledyne Indus., Inc.,* 207 Ill.App.3d 659, 663 (1st

Dist.1990).

"A party is not justified in relying on representations when it has ample opportunity to

ascertain the truth of the representations." *In re Midway Airlines, Inc.*, 180 B.R. 851, 963 (Bankr.

N.D. Ill. 1995) (quoting *Metropolitan Bank,* 4 Ill.App.3d at 979; *See also National Republic*

*Bank,* 63 Ill.App.3d at 925 (citing *Metropolitan Bank*). Moreover, "one is justified in relying

upon the representations of another, without independent investigation, where the person to

whom the representations are made does not have the same ability to discover the truth as the

person making the representations." *In re Midway Airlines, Inc.*, 180 B.R. 851, 963 (Bankr. N.D.

Ill. 1995) (citing *Gerill,* 128 Ill.2d at 195).

Because Plaintiff clearly did not have the same ability to discover the truth as to

Defendants' organizational structure and ownership information, Plaintiff was justified in relying

upon the representation of Par Hawaii under the direction and control of Par Pacific and Chai

(and in furtherance of their alleged fraudulent agreement). And while Defendants claim that the

fact Plaintiff filed a protest too late was of no consequence, this is simply not true.

In *Bradney v. QR Sys. N., Inc.*, CIV.A. 86-4022, 1986 WL 12944, at *3 (E.D. Pa. Nov.

17, 1986), a similar case wherein a competitor fraudulently self-certified as a small business, the

court held that "[t]he maker of a fraudulent misrepresentation is subject to liability for pecuniary

loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made

directly to the other, is made to a third person and the maker intends or has reason to expect that

its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved." Restatement (Second) of Torts § 533 (1977). The court explained:

> By representing to the Navy that it qualified as a small business and by not informing [the plaintiff] otherwise, defendant lulled [the plaintiff] into not questioning defendant's status as a small business thereby resulting in [the plaintiff]'s failure to file a timely protest with the [plaintiff's] contracting officer, a result which defendant admits ultimately cost [the plaintiff] the contract.

*Id.* at 4.

Thus, "while technically speaking, plaintiff in fact did 'nothing in direct reliance upon any alleged misrepresentation of defendant to the Navy,' it was [the plaintiff]'s reliance on defendants misrepresentation to the Navy that it qualified as a small business that resulted in [the plaintiff] doing nothing." *Id.*

Here, like in *Bradney*, Plaintiff alleged that "Defendants intended Plaintiff and others to rely on the false self-certifications and lack of publicly available information related to PAR HAWAII's ownership." (Dkt. 35, ¶129). Plaintiff further alleged that it "justifiably relied on Defendant's false self-certification and concealment of ownership information when it failed to submit a size protest for the 2017 contract, and submitted an untimely size protest for the 2018 contact, which it otherwise would have timely submitted." Dkt. 35, ¶128. Plaintiff alleged that, "[b]ut for Defendants' false self-certification and concerted concealment of PAR HAWAII's ownership and affiliate information, Plaintiff would have timely submitted its size protest." (Dkt. 35, ¶131). Finally, that "[a]s the second-low bidder and qualifying small business, had Plaintiff timely submitted a time protest, Defendant would have been disqualified and Plaintiff would have been awarded both contracts." (Dkt. 35, ¶132).

And, although the court's holding in *Bradney* was based on Pennsylvania law, the result should be the same here. As the Illinois Supreme Court has made clear, "lack of direct contractual relationship between the parties is not a defense in a tort action," and tort liability is to "be measured by the scope of the duty owed rather than the artificial concepts of privity." *Rozny v. Marnul,* 43 Ill.2d 54 (1969). "Thus, liability for negligent misrepresentation may exist as to third parties when their reliance was foreseeable." *Home Quarters Real Est. Group, LLC v. Michigan Data Exch., Inc.*, CIV. 07-12090, 2009 WL 276796, at *4 (E.D. Mich. Feb. 5, 2009) *(citing id.* at 663; *see also Kelley,* 297 Ill. Dec. 355 ("liability is limited to the person or the limited group of persons for whose benefit and guidance the information is intended")).

As the U.S. Supreme Court explained, "a fraudulent misrepresentation can proximately cause actionable injury even to those who do not rely on the misrepresentation." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008) (citing *Rice v. Manley,* 66 N.Y. 82 (1876) (permitting plaintiffs who had arranged to buy a large quantity of cheese to recover against a defendant who induced the vendor to sell him the cheese by falsely representing to the vendor that plaintiffs no longer wished to purchase it). As the Court explained, "any such notion would be contradicted by the long line of cases in which courts have permitted a plaintiff directly injured by a fraudulent misrepresentation to recover even though it was a third party, and not the plaintiff, who relied on the defendant's misrepresentation." *Id.* "Nor is first-party reliance necessary to ensure that there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles articulated in *Holmes* and *Anza*." *Id.* at 657-58.

Finally, Par Defendants argue, "[t]o the extent Plaintiff is attempting to assert a fraudulent concealment claim in addition to the claim for fraudulent misrepresentation, it fails for the additional reason that Par Defendant had no duty to disclose any information to Plaintiffs. A duty of disclosure may arise in one of two scenarios: (1) where 'the defendant owes some fiduciary duty to the plaintiff to make full and fair disclosure and fails to correct a misapprehension of a material fact' or (2) **where 'the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension**.'" *In re Midway Airlines, Inc.*, 180 B.R. 851, 966 (Bankr. N.D. Ill. 1995) (quoting *Coca–Cola,* 620 F.Supp. at 973) (emphasis added).

As Par Defendants themselves allege, "the entire purpose of the protest mechanism is to give bidders an opportunity to challenge certifications by others." (Dkt. 44, p. 32). The SAM database, for which the certifications are submitted, is available to the public. The Defendants – along with Plaintiff and anyone else submitting a bid proposal – are required to self-certify as a small business and provide certain information, including ownership, to the public. Plaintiff relied on these certifications, and the ownership information listed therein, when deciding whether it had a reasonable basis to submit a size protest. By concealing pertinent information therein, Defendant intentionally misrepresented and/or concealed information from Plaintiff, which it had a duty to disclose, and which Plaintiff relied on in deciding not to file a size protest in 2017 and which prevented Plaintiff from discovering sufficient information in the required 5-day timeframe within which Plaintiff was required to submit information to the contracting officer in order for the protest to be considered timely. By submitting inaccurate information, Plaintiff was required to scour the internet for evidence, including Defendants' respective websites, including Chai's, for information related to Par's ownership. Additionally, to the extent

Defendants argue that the SBA made an "adverse inference" based on lack of information which Defendant Chai withheld and/or Par Defendants intentionally concealed, Defendants should be precluded from arguing that Par Hawaii is a small business.

These allegations are sufficient at the pleading stage and Defendants' motions to dismiss Plaintiff's fraudulent concealment claims should be denied.

## IV. REQUEST FOR LEAVE TO AMEND

Defendants urge this Court to dismiss all of Plaintiff's claims *with prejudice* because Plaintiff exercised its right to amend its Complaint "as a matter of course" without Defendants' written consent or the court's leave after Defendants filed their initial set of motions to dismiss, as authorized by Fed. R. Civ. P. 15(a)(1)(B). Defendant's arguments should be rejected. (Dkt. 42, p. 23; Dkt. 44 p. 36).

Dismissal with prejudice is an extreme remedy not warranted under the circumstances. Pursuant to Fed. R. Civ. P. 15(a)(2), the Court should freely give leave [to amend] when justice so requires." Here, the Court has yet to decide the merits of Defendants' motions to dismiss, and the Plaintiff has not had an opportunity to cure any pleadings defects identified by this Court. Plaintiff should – and justice requires Plaintiff to – have an opportunity to hear from the judge on any issues with its Complaint that require further amendment. The fact that Plaintiff elected to amend its complaint as a matter of course after reviewing Defendants' initial motions to dismiss, should not preclude Plaintiff from seeking leave of Court to amend its Complaint after this Court issues its first order addressing Defendants' motions to dismiss. "District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity

to amend her complaint.'" *Gephart v. Wirbicki L. Group, LLC*, 17 CV 0771, 2017 WL 2404948, at *4 (N.D. Ill. June 2, 2017) (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)).

Accordingly, in the event this Court grants Defendants' motion(s) to dismiss any or all of Plaintiff's claims, Plaintiff respectfully requests that this Court grant Plaintiff leave to amend pursuant to Fed. R. Civ. P. 15(a)(2) in order to amend its claims and/or plead any additional factual content that this Court believes is necessary to give Defendants fair notice of what the claims are and the grounds upon which they rest.

Because Plaintiff has plead more than sufficient factual content to put Defendants on fair notice of the claim against them, however, Plaintiff asks this Court to deny Defendants' motions to dismiss and to allow the parties to proceed with discovery.

## CONCLUSION

 For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motions to dismiss. (Dkt. 41-44).

Dated: July 30, 2020          **THE LAW OFFICES OF HAYTHAM FARAJ**

By:     /s/ Haytham Faraj
**HAYTHAM FARAJ, ESQ.**
1935 W Belmont Ave.
Chicago, IL 60657
Tel: (312) 635-0800
Fax: (202) 280-1039
Email: haytham@farajlaw.com

Attorneys for Plaintiff,
3DGS, LLC