UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3DGS, LLC,

        Plaintiff,

    v.

CHAI TRUST COMPANY, LLC, et al.,

        Defendants.

No. 19 CV 7524

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Defendant Par Hawaii Refining, LLC twice outbid plaintiff 3DGS, LLC to win contracts with the federal government set aside for small businesses. Although Par Hawaii certified that it was an eligible business, the Small Business Administration later found Par Hawaii ineligible. 3DGS alleges that Par Hawaii, its owner, defendant Par Pacific Holdings, Inc., and Par Pacific's largest shareholder, defendant Chai Trust Company, LLC, conspired to submit fraudulent self-certifications to the government, harming 3DGS—a legitimate small business—by causing it to lose out on the contracts. 3DGS brings a RICO claim and state-law tort claims against the three companies and anonymous Doe defendants. The Par defendants move to dismiss for lack of personal jurisdiction and improper venue, and both sets of defendants move to dismiss for failure to state a claim. For the reasons discussed below, defendants' motions are granted.

## I.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. In a case with federal-question jurisdiction, a federal court has personal jurisdiction over the defendant if federal law authorizes service of process, regardless of whether a state court could exercise personal jurisdiction over the defendant. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020); *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 807 n.3 (7th Cir. 2002); *see* Fed. R. Civ. P. 4(k)(1)(C). The defendant need only have minimum contacts with the United States as a whole such that the court's exercise of personal jurisdiction would not violate the Due Process Clause of the Fifth Amendment. *Waeltz*, 301 F.3d at 807 n.3. When a defendant moves to dismiss based on personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case of jurisdiction. *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018); *Brook v. McCormley*, 873 F.3d 549, 551–52. (7th Cir. 2017).

In evaluating a Rule 12(b)(3) motion to dismiss for improper venue, I take all allegations in the complaint as true and draw all inferences in favor of the plaintiff. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 808 (7th Cir. 2016); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011). The plaintiff bears the burden of establishing proper venue. *Grantham v. Challenge-Cook Bros.*, 420 F.2d 1182, 1184 (7th Cir. 1969).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must

contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

## II.  Facts

Par Pacific Holdings, Inc. was a publicly traded corporation with more than 150 institutional investors. [35] ¶¶ 9, 13.[1] Par Pacific owned Par Hawaii Refining, LLC. [35] ¶ 9, 12. Chai Trust Company, LLC was Par Pacific's largest shareholder. [35] ¶¶ 8, 14. As of June 2018, Chai Trust owned 28.44 percent of Par Pacific. [35] ¶ 15. The next largest shareholder owned 8.52 percent of the company. [35] ¶ 15.

Chai Trust administered trusts established for the family of billionaire Sam Zell. [35] ¶ 18. Zell was the founder and chairman of Equity Group Investments, a division of Chai Trust that provided investment management services. [35] ¶ 19. Chai Trust was registered with the Illinois Secretary of State as Equity Group Investments and operated under the name EGI. [35] ¶¶ 20, 23. The president of EGI was also on the board of EGI investment companies and the Senior Managing Director of Chai Trust. [35] ¶¶ 21–22.

In 2001, EGI, made a debt investment in Delta Petroleum and stewarded the company through bankruptcy. [35] ¶ 25. Delta Petroleum later changed its name to

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the First Amended Complaint. [35].

Par Pacific. [35] ¶ 26. EGI helped build Par Pacific's management team and develop its acquisition strategy, and Chai Trust placed its agents and associates in positions of power within Par Pacific. [35] ¶¶ 27–28. In 2015, a senior investment manager and Co-President at EGI was appointed President and CEO of Par Pacific. [35] ¶¶ 30–31. The Vice-President of EGI from 2008 until 2013 held various positions at Par Pacific beginning in 2012: Director, CEO, Vice President of Mergers and Acquisitions, and CFO. [35] ¶¶ 32–33. An advisor for EGI was also the Chairman of the Board of Par Pacific. [35] ¶ 34. And the CEO and President of Mid Pac Petroleum, LLC became president of Par Hawaii when Par Pacific acquired the company. [35] ¶ 35.

On four different occasions between 2016 and 2018, Par Pacific's Director of Corporate Procurement certified to the System for Award Management that Par Hawaii was a small business engaged in petroleum refining with a size of 1,500 employees. [35] ¶¶ 36–40. Plaintiff alleges that before submitting those certifications, several executives at Chai Trust and Par Pacific agreed to represent Par Hawaii as a small business, knowing that Par Hawaii did not qualify as a small business. [35] ¶ 41.

In January 2017, the Defense Logistics Agency, Energy Section issued a request for proposals for a one-year contract to provide bulk petroleum. [35] ¶¶ 42–43. The RFP was set aside for a partial small business. [35] ¶ 44. To qualify as a small business, the company had to have either 1,500 employees or the capacity for 200,000 barrels per day of crude oil; be a for-profit business; be independently owned and operated; not be nationally dominant in its field; be physically located and operated

in a specific area; and make a significant contribution to the U.S. economy through taxes or use of American products, material, or labor. [35] ¶¶ 44, 46.

In February 2017, both 3DGS and Par Hawaii submitted offers to the Agency; both parties' submissions included certifications that the company was an eligible small business. [35] ¶ 47. The Agency deemed both parties' proposals acceptable, which opened up the pricing portion of the bid. [35] ¶ 50. All offerors could see the best price during that round, and any offeror could match the offer or beat it. [35] ¶ 50. 3DGS beat the best overall price in the second round, but Par Hawaii beat 3DGS's price in the third round, and Par Hawaii won the contract. [35] ¶¶ 51–52, 54. 3DGS did not have an opportunity to match or beat Par Hawaii's final offer, and no other offer was within competitive range. [35] ¶ 53. A few months later, the contracting officer told 3DGS that it had been the second lowest bidder and was otherwise eligible for the contract. [35] ¶ 55.

In January 2018, the Agency issued another request for proposals for a one-year contract for a small business. [35] ¶¶ 56–58. Again both 3DGS and Par Hawaii submitted offers, and both companies certified that they were eligible small businesses. [35] ¶ 59. Par Hawaii won the contract, and again 3DGS was the second lowest bidder. [35] ¶¶ 61–66. As the lowest bidder and an eligible small business, 3DGS alleges it should have won both contracts. [35] ¶ 98.

In August 2018, 3DGS filed a size protest against Par Hawaii with the contracting officer, based on 3DGS's belief that Par Hawaii was too large to be considered an eligible small business. [35] ¶ 70. The contracting officer forwarded the

complaint to the Small Business Administration Office of Government Contracting, and that office dismissed the protest as untimely. [35] ¶¶ 71–72.

Based on 3DGS's allegations, the Area Office filed its own size protest against Par Hawaii. [35] ¶ 73. Par Hawaii submitted documentation showing that its capacity was below 200,000 barrels and 1,500 employees. [35] ¶¶ 75–76. It also submitted an organizational chart showing that Par Pacific owned Par Hawaii. [35] ¶ 77. The Area Office requested ownership information for Par Pacific to make a proper size determination, and Par Hawaii represented that Par Pacific was a corporation with over 150 institutional investors collectively holding 68.73 percent of its outstanding shares of common stock. [35] ¶ 79. The Area Office requested additional information to make the size determination, but Par Hawaii continued to provide insufficient information. [35] ¶¶ 80–82.

In November 2018, the Area Office concluded that Par Hawaii was not an eligible small business for the 2018 contract, based on Par Hawaii's noncompliance in producing the required documentation. [35] ¶ 83. Par Hawaii became ineligible for procurement authorized by the Small Business Act or Small Business Investment Act of 1958, unless the SBA recertified Par Hawaii or reversed its size determination. [35] ¶ 84. Par Hawaii did not update its public self-certification that it qualified as a small business. [35] ¶ 85.

Par Hawaii appealed the SBA's size determination. [35] ¶ 86. The Area Office said it needed more information regarding Chai Trust—if Chai Trust had the power to control other petroleum refineries, those refineries would be considered Par

Hawaii's affiliates, and their barrels per day would count toward Par Pacific's combined barrels. [35] ¶ 87. Par Hawaii failed to provide the necessary information, and claimed that it lacked the authority to compel Chai Trust to share information with the SBA. [35] ¶ 88. In April 2019, the SBA's Office of Hearings and Appeals issued a final decision affirming the size determination. [35] ¶ 89. A few days later, Par Pacific's procurement director changed Par Hawaii's public self-certification to not be a small business. [35] ¶ 90. If Par Hawaii seeks to self-certify as a small business again, the SBA Government Contracting Office will have to recertify Par Hawaii as a small business. [35] ¶¶ 95–96.

3DGS alleges that Par Pacific, Par Hawaii, and Chai Trust knew that Par Hawaii did not qualify as a small business and was ineligible for both contracts, and that Par Hawaii was acting under the direction and control of Par Pacific and Chai Trust when it submitted false self-certifications and bids for the contracts. [35] ¶ 49, 91–92. 3DGS claims that the three defendants concealed Par Hawaii's ownership information from the SBA, 3DGS, the public, and others to prevent 3DGS and other small businesses from timely filing a size protest. [35] ¶ 93. Although the SBA would have to recertify Par Hawaii in the future, one of Par Pacific's other subsidiaries could self-certify as a small business. [35] ¶ 97.

## III.  Analysis

In its original complaint, 3DGS brought six claims against Chai Trust, Par Pacific, Par Hawaii, and 1-100 Doe defendants. It alleged that defendants violated RICO and the Illinois Consumer Fraud and Deceptive Business Practices Act, and

brought several tort claims. [1]. Par Pacific and Par Hawaii moved to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, and Chai Trust moved separately to dismiss for failure to state a claim. [25], [28]. 3DGS then filed an amended complaint bringing all the same claims, except for the consumer-fraud claim, [35], and defendants' motions were terminated as moot. [36].

The amended complaint alleges racketeering and conspiring to racketeer under RICO (count I), and brings state-law claims of tortious interference with prospective economic advantage (count II), fraudulent misrepresentation and concealment (count III), conspiracy (count IV), and unjust enrichment (count VI).[2] All claims appear to be against all defendants, as well as the Does. Par Hawaii and Par Pacific again move to dismiss for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), and failure to state a claim under Rule 12(b)(6). Chai Trust moves separately to dismiss all claims for failure to state a claim.

### A. The RICO Claim

Courts ordinarily must consider jurisdictional issues before reaching the merits of a claim. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013). Here, however, whether there is personal jurisdiction over the Par defendants turns in part on whether 3DGS has stated a RICO claim against Chai Trust. So I begin with whether 3DGS has adequately pleaded a RICO claim. *See, e.g.*, *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (addressing whether plaintiff had stated a federal claim before addressing personal jurisdiction).

---

[2] There is no count V in the complaint.

### 1. Failure to State a Claim

RICO makes it unlawful for "any person employed by or associated with any enterprise" to conduct that enterprise's affairs "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a RICO claim, 3DGS must plausibly allege (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019).

RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A plaintiff must identify a "person" that is "distinct from the RICO enterprise." *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 588 (7th Cir. 2017) (quoting *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013)); *Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO.").

An association-in-fact enterprise has three structural features: a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). In alleging a common purpose, the plaintiff must identify actions "undertaken on behalf of the *enterprise*," as opposed to actions taken by the defendants in their individual capacities to advance their individual self-interests. *United Food & Commercial Workers Unions & Employers Midwest Health Benefits*

*Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013). Put differently, alleging a "run-of-the-mill commercial relationship" among the defendants is insufficient. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015). A plaintiff must allege "a truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest." *Id.* at 656.

3DGS has not adequately alleged the existence of a distinct enterprise. Its theory is that the three named defendants are all RICO "persons," and that they collectively organized and managed a distinct enterprise with the goal of fraudulently acquiring contracts set aside for small businesses. But the complaint doesn't plausibly allege that defendants collaborated at all, let alone that they did so with a common purpose.[3] 3DGS relies on its allegation that Chai Trust executives agreed with the Par defendants to submit phony self-certifications to the government. But the allegation of an agreement is conclusory. And beyond that vague assertion, nothing links Chai Trust to the fraudulent conduct alleged. The complaint doesn't plausibly allege that Chai Trust had any significant interest or involvement in Par Hawaii's bidding practices, the particular contracts at issue here, or Par Hawaii's submission of inaccurate self-certifications to the DLA.

---

[3] Usually, a parent and its subsidiary do not constitute an enterprise separate from the company itself. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 934 (7th Cir. 2003); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997); *see also Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1185–87 (10th Cir. 2019) ("An organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself." (quoting *Yellow Bus Lines v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 141 (D.C. Cir. 1989)). Since plaintiff alleges that Chai Trust was part of the enterprise too, that Par Hawaii was a subsidiary of Par Pacific does not automatically doom the RICO claim. A shareholder, parent company, and subsidiary could conceivably form a distinct enterprise. But 3DGS hasn't alleged one here for the reasons discussed above.

Beyond the allegation of an agreement, 3DGS offers two links among the three defendants: their commercial relationships, and a list of people who worked in various capacities at both Chai Trust and the Par companies. True, Chai Trust was Par Pacific's largest shareholder. But Chai Trust held less than a third of Par Pacific's total stock, which doesn't support the inference that Chai Trust was in control at Par Pacific. And Chai Trust's only connection to Par Hawaii—the entity alleged to have actually committed the fraud at issue—was Par Hawaii's status as a subsidiary of Par Pacific. So Chai Trust's connection to Par Hawaii was even more attenuated than its relationship to Par Pacific. Likewise, the allegation that Chai Trust invested in Par Pacific in 2001 under a different name is unpersuasive. The fraud at issue here occurred in 2017 and 2018, and the collaboration between Chai Trust and Par Pacific in 2001 had nothing to do with obtaining government contracts.

Nor does some overlap in personnel among the companies establish the existence of an enterprise. The complaint doesn't identify anyone who worked at both Chai Trust and Par Hawaii—it names several people who worked at both Chai Trust and Par Pacific, and one person who worked at Par Pacific and Par Hawaii. So those allegations don't advance the argument that defendants acted in concert toward a common goal. Merely identifying people who worked at both Chai Trust and Par Hawaii wouldn't establish an enterprise, but the fact that none of the executives alleged to have worked for multiple defendants worked at both Chai Trust and Par Hawaii makes the inference of concerted action between the two even less persuasive.

*Cf. Bible*, 799 F.3d at 659 (plaintiff pleaded an enterprise where officials from one company participated in the alleged racketeering activity at the other company).

On these allegations, Par Hawaii engaged in its own affairs to further its own self-interest. It didn't act with the other defendants to pursue a common goal. 3DGS describes only a "run-of-the-mill commercial relationship" among defendants. *Id.*; *see United Food*, 719 F.3d at 854 (no enterprise pleaded where the interaction between two companies reflected only a commercial relationship and each company was merely "going about its own business"); *see also Sheikh v. Wheeler*, 790 Fed. App'x 793, 796 (7th Cir. 2019) (same, where defendants acted "in their individual self-interests" and plaintiff didn't allege that they "joined together with a common purpose to defraud"). That the three defendants were loosely connected by their financial relationships and a handful of senior employees fails to establish that an association-in-fact enterprise existed for RICO purposes.

The RICO claim also fails because 3DGS hasn't pleaded a pattern of racketeering. To do so, it must allege two predicate acts listed in 18 U.S.C. § 1961(1) within a ten-year period. 18 U.S.C. § 1961(5); *Bible*, 799 F.3d at 659; *Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999). A plaintiff also must demonstrate a relationship between the predicate acts and a threat of continuing activity, known as the "continuity plus relationship" test. *Menzies*, 943 F.3d at 337. A plaintiff can establish continuity by either showing "closed-ended" or "open-ended" misconduct. *Id.* A closed-ended series of conduct exists for such an extended period of time that the threat of future harm is implicit. *Id.* The focus is on the number and

variety of predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.*

An open-ended series of conduct is short-lived, but shows clear signs of threatening to continue into the future. *Id.* The focus is not on what acts occurred in the past, but on whether "a concrete threat remains for the conduct to continue moving forward." *Id.* A plaintiff may show that a defendant's actions pose a "specific threat of repetition"; that the predicate acts formed part of the defendant's "ongoing and regular way of doing business"; or that the defendant operates a "long-term association for criminal purposes." *Id.* When a plaintiff seeks to plead the pattern element through predicate acts of mail or wire fraud, the heightened pleading standard of Rule 9(b) applies. *Id.* at 338. The plaintiff must plead the who, what, when, where, and how of the alleged fraud. *Id.*

3DGS has alleged timely acts of fraud with specificity. It alleges that on four specific dates between 2016 and 2018, Par Pacific's procurement director self-certified to the government that Par Hawaii was a small business. Further, in early 2017 and 2018, Par Hawaii submitted bids for government contracts, and, as part of those bids, certified again that Par Hawaii met the small-business eligibility requirements. Since 3DGS specifies who made the misrepresentations, their content, and their timing, the allegations are sufficiently particular for Rule 9(b).

But 3DGS stumbles over threat of continuity. It appears to rely on an open-ended theory, arguing that defendants might try to improperly enter the bidding

process again in the future. But the SBA decertified Par Hawaii as a small business, and the complaint alleges that if Par Hawaii seeks to bid in the future, the government will have to recertify it as a small business. That Par Hawaii will have to withstand initial SBA review before bidding in the future negates any real threat that it will improperly bid on contracts it's ineligible for. If an alleged scheme has a "natural ending point," the threat of continuity requirement is not satisfied. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 829 (7th Cir. 2016); *see also Menzies*, 943 F.3d at 343 (allegations of open-ended continuity were insufficient because "any risk of future fraud was drying up"). Defendants' alleged scheme ended when the SBA got wind of it and conducted its review. Finally, 3DGS suggests that the threat of ongoing fraud remains active because defendants could create another company that will falsely hold itself out as a small business. But that allegation is inconsistent with the conduct as alleged in the complaint—3DGS does not allege that Chai Trust and Par Pacific created Par Hawaii as a tool to fraudulently obtain government contracts. The idea that they will do so with a different company in the future is too removed from the conduct that's alleged, and too speculative to be plausible.

3DGS's RICO conspiracy claim fares no better. 3DGS must establish that defendants agreed to control or participate in an enterprise through a pattern of racketeering activity, and that someone would commit at least two predicate acts to accomplish those goals. *United Food*, 719 F.3d at 856. But failure to allege the existence of an enterprise is fatal to the claim. *Id.* The heart of a RICO conspiracy is

14

an agreement to commit a substantive violation of the statute. Without allegations that establish a violation of § 1962(c), 3DGS cannot show a plausible violation of § 1962(d) based on those same allegations. Since 3DGS has not sufficiently alleged either an enterprise or a pattern of racketeering, it fails to state a conspiracy claim as well.

Ordinarily, leave to amend should be freely given unless amendment would be futile. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). But 3DGS already amended after defendants moved to dismiss its first complaint. The amended complaint brings the same RICO claim, based on the same set of facts. 3DGS had notice of defendants' arguments about its deficient pleading and took an opportunity to try to fix the defects in its original complaint. It was unable to state a RICO claim. 3DGS doesn't say what it would add to a second amended complaint to make its RICO claim plausible. It instead asks for limited discovery to determine whether an enterprise existed. [48] at 16. But a defendant "should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 802–03 (7th Cir. 2008); *see also Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) ("[T]he complaint itself must contain sufficient factual detail … before discovery may commence."). That's especially true in complex RICO cases like this one, which tend to result in expensive discovery. *Limestone*, 520 F.3d at 803. Neither of 3DGS's first two complaints offered sufficient detail to establish that a RICO

enterprise existed, and absent some reason to think that a third try would cure the claim's deficiencies, amendment would be futile. Count I is dismissed as to Chai Trust with prejudice.

## 2. Personal Jurisdiction and Venue

A civil RICO action may be brought against any person in a district "in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). The statute authorizes service over "other parties" that do not reside in the district if the "ends of justice" so require. 18 U.S.C. § 1965(b); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987).[4] Put simply, RICO authorizes nationwide service of process if at least one defendant has minimum contacts with the forum, and the ends of justice require bringing the other defendants into that forum. *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105 (3d Cir. 2020); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998).

---

[4] The Seventh Circuit reads § 1965(a) to "deal[] with venue" and § 1965(b) to "create[] personal jurisdiction by authorizing service," and also to limit venue. *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671–72 (7th Cir. 1987). Other circuits view § 1965(a) as creating a requirement for the exercise of personal jurisdiction. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998) ("First, 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case."); *see Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 120 (3d Cir. 2020) (interpreting the statute to "clearly require the presence of at least one defendant that meets the traditional contacts test" for a court to exercise personal jurisdiction); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006) ("When a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice."). Whether the minimum-contacts requirement addresses venue or jurisdiction is immaterial here. The outcome is the same—since no remaining defendant has contacts with Illinois, the ends of justice don't require the out-of-state defendants to be sued here.

16

Here, Chai Trust is the only defendant with minimum contacts in Illinois. Chai Trust was both incorporated in and had its principal place of business here, while Par Pacific was incorporated in Delaware with its principal place of business in Texas, and Par Hawaii was both incorporated in and had its principal place of business in Hawaii. Neither Par defendant is alleged to have conducted business in Illinois—all of the conduct at issue centered around contracts to be completed in Hawaii. Chai Trust was the only defendant that "resides, is found, has an agent, or transacts his affairs" in Illinois. 18 U.S.C. § 1965(a). Since 3DGS has failed to state a RICO claim against Chai Trust, Chai Trust is out of the case, and 3DGS cannot satisfy § 1965(a). With no Illinois defendant in the case, the ends of justice don't require haling the Par defendants into court here.

The Par defendants' motion to dismiss for lack of personal jurisdiction and improper venue is granted. Count I is dismissed as to the Par defendants without prejudice.

### B. The State-Law Claims

#### 1. Personal Jurisdiction

When a court's personal jurisdiction derives from a federal statute authorizing nationwide service of process, the court also has personal jurisdiction over the state-law claims arising from the same facts under the doctrine of pendent personal jurisdiction. *Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 449–50 (7th Cir. 2000). But since 3DGS "failed to adequately plead a federal … claim, these

jurisdictional options drop out of the case." *Tamburo*, 601 F.3d at 701 n.6. Traditional long-arm jurisdictional analysis applies to any remaining state-law claims. *Id.* at 700.

3DGS doesn't argue personal jurisdiction exists over the Par defendants outside of RICO's nationwide service provision. Nor could it. Neither Par Pacific nor Par Hawaii were formed in Illinois or had a principal place of business in Illinois, so neither company was at home in Illinois for purposes of general personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And none of the alleged conduct occurred in Illinois, so there's no viable argument that either defendant had claim-specific contact with Illinois, as required for an Illinois court to exercise specific personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014).

Counts II, III, IV, and VI are dismissed without prejudice as to the Par defendants for lack of personal jurisdiction.

### 2. Subject-Matter Jurisdiction

Only the state-law claims against Chai Trust remain. When a district court dismisses the only federal claims in a complaint under Rule 12(b)(6), the court should typically relinquish jurisdiction over the state claims. *Domanus v. Locke Lord LLP*, 847 F.3d 469, 483 (7th Cir. 2017); *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) ("The usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed.'" (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999))).[5] Since the RICO

---

[5] 3DGS refers to diversity jurisdiction in its complaint, but its jurisdictional allegations are facially deficient. 3DGS, Chai Trust, and Par Hawaii are all LLCs, but 3DGS doesn't identify any of their members, as required to allege diversity jurisdiction. *West v. Louisville Gas &*

claim is dismissed, I relinquish jurisdiction over the state-law claims. Counts II, III, IV, and VI are dismissed against Chai Trust without prejudice.

### 3. Failure to State a Claim

The parties briefed the merits of the state-law claims, so I address them in the interest of completeness. 3DGS has not adequately pleaded any of its state-law claims. To state a claim for tortious interference with a prospective business expectancy, 3DGS must show (1) it had a reasonable expectation of entering into a valid business relationship; (2) defendants knew about the expectancy; (3) defendants purposefully or intentionally interfered to prevent 3DGS's legitimate expectancy from ripening into a valid business relationship; and (4) damages. *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009).

To state a claim for fraudulent misrepresentation, 3DGS must allege (1) a false statement or omission of material fact; (2) known to be false by the person making it; (3) intent to induce 3DGS to act; (4) 3DGS's justifiable reliance on the truth of the statements; and (5) damages. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017). A plaintiff alleging fraudulent omission or concealment must also allege that the defendant concealed a material fact when it was under a "duty to disclose that fact to plaintiff." *Id.* at 737 (quoting *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 500 (1996)). A duty to disclose may be based on a fiduciary relationship, or a relationship

---

*Elec. Co.*, 951 F.3d 827, 829 (7th Cir. 2020); *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007); *see* 28 U.S.C. § 1332.

of trust and confidence where the defendant is in a position of superiority over the plaintiff. *Id.*

First, 3DGS did not have a reasonable expectancy of entering into a contract with the DLA. The Agency held a competitive bidding process for the contracts, so no one entity could have had a reasonable expectation of obtaining the contract. All of the bidders were competing with each other, and it cannot be the case that every potential bidder had a reasonable business expectancy and thus a claim for tortious interference. *See generally Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 408 (1996) (being a "leading candidate" for a job was insufficient to show a "legally protectible expectancy" because plaintiff's theory would expand liability to "all persons who interview for a particular job"). That 3DGS was the second lowest bidder and otherwise eligible for the contract doesn't render its expectation of winning the contract reasonable. The complaint suggests that 3DGS and Par Hawaii were not the only competitors. *See* [35] ¶ 53 (noting that other offers weren't in competitive range). DLA considered professional reputation and past performance in awarding contracts, not just the bid price. And 3DGS had never had a contract with the DLA before. Its chance of winning the contract but for Par Hawaii's involvement was far from a sure thing. *See Blaum v. Triad Isotopes*, 104 F.Supp.3d 901, 931 (N.D. Ill. 2015) (plaintiff failed to show reasonable expectation in bidding process because "all competitors theoretically had an equal expectancy of winning the contract").

And 3DGS has not adequately pleaded that defendants knew of its expectancy. While it's a reasonable inference that Par Hawaii knew it would be competing with

other businesses, 3DGS's argument that Par Hawaii therefore knew about 3DGS's business expectancy is unpersuasive. 3DGS must plausibly allege that defendants knew of 3DGS's specific expectancy. Stating that defendants must have known about any number of unspecified competitors falls short of plausibly pleading knowledge. *Cf. Advantage Mktg. Grp., Inc. v. Keane*, 2019 IL App (1st) 181126, ¶¶ 36, 48 (where defendant and plaintiff discussed the business opportunity they were competing for, complaint adequately alleged that defendant knew of plaintiff's expectancy).

3DGS also fails to allege any intent on defendants' part, either to interfere with 3DGS's business expectancy or to induce its reliance on the false statements. A plaintiff must plausibly plead that the defendant "directed the allegedly false statements to" the plaintiff, intending the plaintiff to rely on them. *Suburban 1, Inc. v. GHS Mortg., LLC*, 358 Ill.App.3d 769, 772–73 (2d Dist. 2005). As alleged, Par Hawaii misrepresented itself as a small business to the DLA, not to 3DGS. Par Hawaii's intent was to induce DLA to rely on Par Hawaii's certifications and award Par Hawaii the government contracts. That 3DGS also relied on those misrepresentations was a byproduct of Par Hawaii's making the statements, but it doesn't show that Par Hawaii intended to induce the reliance of its competitors, rather than the agency with whom it hoped to do business.

Beyond the other defects in its fraudulent-misrepresentation claim, 3DGS has not shown that defendants had any duty to disclose. A duty to disclose can be based on a fiduciary relationship, or a relationship where the defendant is in a "position of influence and superiority over plaintiff." *Toulon*, 877 F.3d at 737 (quoting *Connick*,

174 Ill.2d at 500). As alleged, the relationship between 3DGS and Par Hawaii was solely one of two companies competing for the same contract. Par Hawaii was under no duty to disclose whether it was a legitimate small business to 3DGS.

Finally, 3DGS fails to state claims for conspiracy and unjust enrichment. A conspiracy consists of an agreement between two or more people to participate in an unlawful act or a lawful act in an unlawful manner, and a tortious act performed by one of the coconspirators in furtherance of that agreement. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007); *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶¶ 18–21. Conspiracy is not a separate tort in Illinois; it is a means of establishing vicarious liability among coconspirators for an underlying tort. *Merrilees v. Merrilees,* 2013 IL App (1st) 121897, ¶ 49. So to state a claim, the plaintiff must state an independent cause of action underlying the conspiracy. *Id.* ¶ 45. If the underlying tort sounds in fraud, Rule 9(b) applies, and the details of the agreement itself must be pleaded with particularity. *Borsellino*, 477 F.3d at 509.

3DGS has not adequately pleaded an underlying tort for the reasons just discussed. Nor has it sufficiently alleged the existence of an agreement. The single allegation of agreement in the complaint is conclusory. And while it names a few individuals alleged to have made the agreement, the complaint offers no details about when and where the agreement was formed, or what its object was. This allegation cannot withstand Rule 9(b). *See Borsellino*, 477 F.3d at 509 (dismissing conspiracy claim where the complaint "tells us nothing about the nature of the purported

agreement to defraud the plaintiffs, such as when it was made or which individuals … arranged the conspiracy").

Finally, like conspiracy, there is no standalone claim for unjust enrichment in Illinois. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Unjust enrichment is a condition brought about by unlawful conduct, such as fraud. *Id.* Since 3DGS has failed to state any fraud claim, it has also failed to state a claim for unjust enrichment.

## IV. Conclusion

Defendants' motions [41], [43], are granted. All counts are dismissed as to the Par defendants for lack of personal jurisdiction. Count I is dismissed as to Chai Trust with prejudice for failure to state a claim. Counts II, III, IV, and VI are dismissed as to Chai Trust without prejudice. There is no federal claim against Chai Trust and this court is not the forum for any other alleged disputes between the parties. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: December 15, 2020